THE STATE OF OHIO *v.* DICKINSON.

(No. 21162—Decided June 4, 1969.)

Common Pleas Court of Stark County.

*Mr. David D. Dowd, Jr.,* prosecuting attorney, and *Mr. Donald M. Benson,* for plaintiff.
*Mr. Ralph W. Ross,* for defendant.

QUINN, J. The defendant was secretly indicted by the Grand Jury of Stark County for unlawfully and unintentionally causing the death of a viable unborn child while violating the laws of Ohio by operating a motor vehicle while under the influence of alcohol and without due regard for the safety of persons or property, and entered a plea of not guilty.

The defendant, in open court, accompanied by counsel, with whom he had consulted concerning the above charge, voluntarily waived and relinquished his right to trial by jury and elected to be tried by a judge of the court.

The evidence offered on behalf of both the state of Ohio and the defendant consisted of:

1. Stipulation of facts.

2. Record of preliminary hearing in Canton Municipal Court, at which time the original charge of homicide by vehicle, first degree, was dismissed, and defendant discharged. (Mutual Exhibit "B")

3. Stark County Coroner's report of autopsy of a seven-month stillborn infant child. (Mutual Exhibit "A")

The facts concerning the accident and the alcoholic content of defendant's blood are succintly stated in the stipulation of fact, as follows:

"It is stipulated by and between the state of Ohio,

plaintiff, and Ronald B. Dickinson, defendant, that the evidence in this case established that on December 24, 1967, at approximately 6.45 p. m., the defendant, Ronald B. Dickinson, was operating a 1955 white Chevrolet, two door automobile, License No. Q 579 F, in an easterly direction on Seventh Street, Northwest, in the 1500 block of Seventh Street, Northwest, Stark County, Ohio.

"That Daniel Peebles, on December 24, 1967, at approximately 6:45 p. m., was operating his 1954 Dodge, four door automobile, License No. N 1127 K, on Seventh Street, Northwest, in the 1500 block of Seventh Street, Northwest, in a westerly direction. In the Peebles' automobile were Mrs. Nancy Peebles, who was seven months pregnant at the time; Linda Peebles, five year old daughter of Mr. and Mrs. Peebles; John Peebles, nine year old son of Mr. and Mrs. Peebles, and Mrs. Lucille Miller, seventy-three year old mother of Mrs. Nancy Peebles.

"That at approximately 6:45 p. m., on December 24, 1967, the defendant, while operating his automobile in an easterly direction in the 1500 block of Seventh Street, Northwest, attempted to pass another eastbound automobile and pass left of center on said street in the 1500 block. At this point, the defendant's automobile struck the Peebles' automobile head-on. The impact occurred about three feet south of the north curb line on Seventh Street, Northwest, in the 1500 block. Impact on the defendant's automobile occurred on the left front. Impact on the Peebles automobile occurred to the right front.

"That prior to and at the time of the accident, said Nancy Peebles, the mother of the unborn child, had felt life, in said unborn child.

"That as a result of the accident, the occupants, of both automobiles were taken to Aultman Hospital with various injuries. Mrs. Nancy Peebles was admitted to Aultman Hospital in the evening of December 24, 1967, suffering from contusions and multiple lacerations of the chest and abdomen and a fracture of the left knee. At 6:20 a. m., on December 26, 1967, Mrs. Peebles aborted an infant baby girl at Aultman Hospital in the Intensive Care Unit. An autopsy was performed at Aultman Hospital by the

Assistant Pathologist. He was assisted by Stark County Coroner, Dr. G. S. Shaheen, M. D. The Coroner ruled that the death of the infant was due to Hypoxia, due to placental hemorrhage, due to uterine contusion, as a direct result of the above described traffic accident.

"Dr. Shaheen determined that the fetus was compatible with that of a seven-month pregnancy.

"That the testimony of Dr. G. S. Shaheen would be that this seven month old fetus, the unborn child, Baby Girl Peebles, was—medically speaking—a viable child at the time of the accident, and was capable of sustaining life outside of her mother's body.

"That at Aultman Hospital a blood sample was taken from the defendant by the medical technician upon the direction of Dr. Gross, at the request of the Canton Police Department. The blood was tested for alcohol content by Sibylle Walters, a section Chief of Special Chemistry, at Aultman Hospital. Her test indicated that defendant's blood had an alcohol content of point two seven four grams percent. This could be stated another way—point twenty-seven hundredths percent alcohol content."

With respect to the question of the effect on a person of the admitted alcoholic consumption by defendant which resulted in the alcoholic content of his blood being "twenty-seven hundredths percent * * *," the Stark County Coroner, after being properly qualified, testified as follows: (record, page 51.)

"Q. Dr. Shaheen, you have had occasion to study the effects of alcohol upon a human being, have you not? A. Yes, sir.

"Q. Now, posing to you a hypothetical question of where you have a male adult 20 years of age who is involved in an accident on the 24th day of December, 1967, at approximately 6:45 p. m.; is then removed to a hospital; and at 7:30 a blood test is [continuing on page 52 of the record] taken and this test analyzed and there being a finding of .274 grams percent alcohol in the blood, would you be able to give an opinion as to whether or not that person, at the time of the accident, which was approximately 45 minutes prior to the taking of the blood sample,

whether or not he would have been intoxicated or under the influence at the time he was operating that motor vehicle? A. I have.

"Q. This would be your own opinion since you are qualified and you have been stipulated as being qualified to give an [continuing on page 53 of the record] opinion? This would be your own opinion from your studies, your work in this field, your education, and so forth? A. Yes, sir.

"Q. And that answer is: Yes, he would be under the influence of alcohol? A. Yes, sir."

The evidence is very clear and beyond a reasonable doubt that defendant was operating a motor vehicle while under the influence of alcohol and without due regard for the safety and rights of other persons, and in such a manner as to endanger the life, limb or property of other persons while in a lawful use of the streets or highways. This is in direct violation of Sections 4511.19 and 4511.20, Revised Code, and if death to a person resulted from either of such traffic violations, he must be found guilty of homicide by vehicle in the first degree. This ruling is controlled by Section 4511.181, Revised Code, which reads as follows:

"No person shall unlawfully and unintentionally cause the death of another while violating Section 4511.19, 4511.20 * * * of the Revised Code. * * *"

The remaining issue is whether or not a seven-month, viable, unborn child can be considered a "person" within the contemplation of that word as used in the statute.

The matter has been considered in Ohio in civil actions for injury or wrongful death. (*Williams, an Infant,* v. *Marion Rapid Transit, Inc.,* 152 Ohio St. 114; *Jasinsky, Admr.,* v. *Potts,* 153 Ohio St. 529.) In the *Williams case* Judge Matthias said:

"To hold that the plaintiff in the instant case did not suffer an injury in her person would require this court to announce as a matter of law the infant is a part of the mother until birth and has no existence in law until that time. In our view [unanimous court] such a ruling would deprive the infant of the right conferred by the Constitution upon all persons, by the application of a time-worn

fiction not founded on fact and within common knowledge untrue and unjustified.''

This reasoning was followed in the *Jasinsky case* finding such an infant who died after birth as a result of injuries suffered prior to birth to be a ''person'' as stated in the Ohio wrongful death statute (Section 2125.01, Revised Code), just as the *Williams case* which found such an infant a person within the meaning of Section 16, Article I of the Ohio Constitution.

The reasoning of the courts in the *Williams* and *Jasinsky* cases was adopted in *Stidem, Admx., v. Ashmore,* 109 Ohio App. 431, where the action involved a viable unborn child that was subsequently stillborn. The court said in part:

''While the Supreme Court has not yet been called upon to decide whether a cause of action exists for the wrongful death of a viable child which occurred shortly before birth, it is our view that the principles declared by that court in these two cases lead logically and irresistibly to the conclusion that such a cause of action does exist.''

In the interpretation of statutes it is the function of the court to ascertain, declare and give effect to the intention of the law-making body. If the language is unambiguous and the meaning clear there is no cause for interpretation. On the other hand where the complete meaning of a word or phrase is not defined or is ambiguous the court is required to ascertain the legislative intent.

The vehicular homicide statute clearly limits the crime to the death of a ''person.'' In the sense intended that must mean a living individual. The medical evidence establishes the fact that the child was living at the time of the accident, and as a result of the accident was strangled to death. Certainly such a child would be within the contemplation of the statute. As any other living individual such child was subject to the vicissitudes of life, and in this case that life was ended by flagrant violation of the law governing operation of motor vehicles.

The court finds the defendant guilty as charged in the Indictment.