THE STATE OF OHIO, APPELLEE, *v.* DICKINSON, APPELLANT.

(No. 3533—Decided September 17, 1970.)

*Mr. David D. Dowd, Jr.,* for appellee.
*Mr. Ralph W. Ross,* for appellant.

VAN NOSTRAN, P. J. This appeal on questions of law is from a judgment of the Court of Common Pleas of Stark County, Ohio, sentencing the defendant-appellant to one to twenty years in the Ohio Penitentiary for violation of R. C. 4511.181 which reads as follows:

"No person shall unlawfully and unintentionally cause the death of another while violating Section 4511.19, 4511.-20, 4511.201 or 4511.251 of the Revised Code. Any person violating this section is guilty of homicide by vehicle in the first degree."

The evidence before the trial court was in the form of a stipulation between the parties and included a stipulation that in substance the victim of this homicide was a viable but unborn fetus of a seven-month pregnant woman.

This case is unique because it is the first time an Ohio court has regarded a viable unborn fetus to be the subject of homicide.

In the interest of brevity, we state that the carefully considered opinion of the Common Pleas Court of Stark County, Ohio, is reported as *State* v. *Dickinson* (1969), 18 Ohio Misc. 151, and has been the subject of comment in the Bar, including but not limited to an article appearing in Vol. 3, No. 1 of the Akron Law Review at page 84 (Fall 1969). We make reference to both publications.

We reverse the conviction and enter final judgment of acquittal. The reasons we must do so appear to us to be simple and compelling:

The Common Pleas Court based its ruling upon two precedents of the Ohio Supreme Court which, for purposes of civil personal injury cases, defined "persons" to include a viable unborn fetus. *Williams* v. *Transit, Inc.* (1949), 152 Ohio St. 114, and *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529.

We feel bound to distinguish those civil cases from criminal prosecutions for homicide.

Ohio has no common-law crimes. No act is criminal in this state unless it is expressly made so by positive legislative enactment. *Smith* v. *State* (1861), 12 Ohio St. 466, 80 Am. Dec. 355. Although there are no common-law crimes, it is axiomatic that certain words, when used in criminal statutes, are judicially construed to have been used by the Legislature in their common-law sense, in the absence of any express legislative definition to the contrary. *Baker* v. *State* (1861), 12 Ohio St. 214; *State* v. *Schwab* (1924), 109 Ohio St. 532.

It is well settled that at common law an unborn fetus, viable or otherwise, could not be the subject of homicide. *Rex* v. *Brain,* 6 C & P, 349, 172 *Eng. Report* 1272 (1834); *Rex* v. *Enoch,* 5 C & P, 539, 172 *Eng. Report* 1089 (1833). See also Clark & Marshall, Crimes, 534 *et seq.,* Section 10 (6th Ed., Wingersky Revision, 1958) *et seq.* Also see *Krichman* v. *United States* (1921), 256 U. S. 363. Therefore, since we find no legislative definition of the word "person" in the Ohio criminal homicide statutes, we hold that when the Legislature used the word "person" in a homicide statute, that word must be understood to mean what it meant in common-law homicide.

The language of this statute is not mere street corner conversation. The language was officially selected by one legal agency and addressed to judges as legal technicians in another branch of the same government. Where there is a fixed and clear pre-existing legal meaning for language the courts must give effect to it.

As we analyze this case, we find the word "person" to have a clear and fixed meaning within the context of common-law crimes.

In the absence of a contrary legislative definition, we hold, as Ohio courts regularly do, that the law requires that language be given that meaning which in criminal context has been historically clear among lawyers. However, even assuming arguendo this to be a case of ambiguity, we would reach the same result by applying the rule that in case of ambiguity criminal statutes are to be construed in favor of the accused. R. C. 1.11. The state selected the language and if it is not clear, it must lose under a salutary rule which has weathered the stress of long experience.

In summary, since we find the word "person" to have had at the time of its use by the Legislature a clear cut common law meaning, and since the Legislature did not otherwise define the word, we feel the more appropriate rule is as set forth in the opinion of the case of *In re Torok*, 161 Ohio St. 585, at 589, by Chief Justice Weygandt:

"As this court has repeated in numerous cases involving statutory construction, the question is not what did the General Assembly intend to enact but what is the meaning of that which it did enact. *Slingluff* v. *Weaver*, 66 Ohio St. 621, 64 N. E. 574."

Until the Legislature of this state amends the homicide statutes so as to expressly include as the object of their protection a viable unborn fetus, we feel compelled to hold that an unborn fetus, viable or otherwise, has not been made the subject of homicide under R. C. 4511.181.

See also to the same effect the recent Supreme Court of California case of *Keeler* v. *Superior Court of Amador County* decided June 12, 1970.

For the reasons set out, the judgment of conviction of the Common Pleas Court is reversed and a final judgment of acquittal entered.

*Judgment reversed.*

RUTHERFORD, J., concurs.

RUTHERFORD, J., concurring. I concur for the reasons set forth in the majority opinion and for an additional reason which I believe to be applicable to the particular statute being construed.

R. C. 4511.181, *supra,* reads in pertinent part:

"*No person* shall unlawfully and unintentionally cause the death *of another* * * *." (Emphasis added.)

By use of the word "person" the Legislature of necessity had reference to a person born alive and living as was the defendant herein. The person whose death was caused is referred to in the statute not by the word "person" but as "another," which need not necessarily, but in its most common usage would have reference to another of the same, *i. e.,* to another born alive living person.

For the reasons set forth in the majority opinion, because the word "person" as used in this statute has reference to a born alive living being and because the Legislature chose to use the word "another," I would interpret the legislative intent of R. C. 4511.181 to be that:

"No person [born alive and living] shall unlawfully and unintentionally cause the death of another [born alive and living person] * * *"

I have found no cause in which a conviction of homicide has been imposed for the death of a viable unborn fetus caused by an unlawful but unintentional act. In my opinion the Legislature did not so intend by the provisions of R. C. 4511.181; nor is the statute sufficiently specific that a defendant would be reasonably advised that he could be so charged.

McLAUGHLIN, J. (Retired. Assigned to active duty under authority of Section 6 (C), Article IV, Constitution.), dissenting. The controlling question here is whether a seven month viable fetus is a person within the meaning of R. C. 4511.181, effective November 14, 1967.

In my opinion the words of this statute are clear, plain and unambiguous. The question is, therefore, one of law and not of statutory construction or interpretation.

As a legal proposition, Ohio cases have decided a via-

ble fetus is a person entitled to all civil rights. *Williams* v. *Transit, Inc.* (1949), 152 Ohio St. 114; *Jasinsky* v. *Potts* (1950), 153 Ohio St. 529; and *Stidam* v. *Ashmore,* 109 Ohio App. 431.

Such a viable fetus, in my opinion, is no less a person entitled to public protection from drunk drivers.

Conditions of modern life, with medical experts and hospitals equipped with the techniques and "know how" to preserve the lives of premature infants, attest to the great concern of the state to protect life before birth.

In my opinion, this viable fetus capable of sustaining life outside the mother's body is a person within the meaning of R. C. 4511.181.

I would affirm this judgment and sentence.