THE STATE OF OHIO, APPELLANT, *v.* DICKINSON, APPELLEE.

[Cite as State v. Dickinson (1971), 28 Ohio St. 2d 65.]

(No. 70-651—Decided November 24, 1971.)

*Mr. David D. Dowd, Jr.,* prosecuting attorney, and *Mr. Dale T. Evans,* for appellant.

*Mr. Ralph W. Ross,* for appellee.

STERN, J. This is a case of first impression on the issue of whether a viable unborn fetus is within the subject of R. C. 4511.181. We hold that it is not.

R. C. 4511.181 states:

"No *person* shall unlawfully and unintentionally cause the death of *another* while violating Section 4511.19 * * * of the Revised Code. Any person violating this section is guilty of homicide by vehicle in the first degree." (Emphasis supplied.)

The stipulated facts establish that the defendant was violating R. C. 4511.19 (operation of a vehicle while under

influence of alcohol or drugs) at the time of the accident, and that as a direct result of the accident. Baby Girl Peebles was aborted.

The issue involved here is whether Baby Girl Peebles falls within the meaning of the word "another," as used in R. C. 4511.181.

Grammatical construction of R. C. 4511.181 indicates that the word "another," a pronoun appearing as the eleventh word in the first sentence of that statute, was deliberately used by the General Assembly with reference to the word "person" in the first part of that sentence.

R. C. 4511.01(V), which is clearly *in pari materia* with R. C. 4511.181, defines "person" as "every natural person," and Webster's Third New International Dictionary defines "natural" as "existing or present from birth." This indicates an intent by the General Assembly that "person" does not include a viable unborn fetus. To substantiate this intent, this court will look beyond the statute and in doing this we bear in mind that criminal statutes must be construed strictly against the state. *State* v. *Meyers* (1897), 56 Ohio St. 340; *Cleveland* v. *Jorski* (1944), 142 Ohio St. 529; *State, ex rel. Corrigan,* v. *Cleveland Cliffs Iron Co.* (1969), 169 Ohio St. 42. Further, since no legislative history of statutes is maintained in Ohio, we must look to the source of the statute, and to judicial pronouncements to determine the meaning of the word in question.

The history of R. C. 4511.181 indicates that there has been little change in the pertinent wording of this statute since it first became law.[8] It is significant, however, that un-

---

[8] From the time of enactment of the laws of the Northwest Territory, through enactments in the Revised Statutes and the General Code, until 1935, the crime of manslaughter was continuously defined as the unlawful killing of *another* without malice.

In 1935, the General Assembly created the additional offense of manslaughter in the second degree, for the unlawful and unintentional killing of *another*, "while engaged in a violation of any law of this state applying to the use or regulation of traffic * * *." (G. C. 12404-1.) Although that offense now appears as R. C. 4511.181 in the chapter devoted to Motor Vehicle Traffic Laws, there has been no substantial

til 1935 this statute was found in the criminal section of Ohio Law. It is also significant that all criminal law in this state is statutory, *State* v. *Cimpritz* (1953), 158 Ohio St. 490, and most of it had its origin in common law.

The common law status of an unborn child' is best described by the oft-quoted statement of Coke in the mid-17th century:

"If a woman be quick with childe, and by a potion or otherwise killeth it in her wombe, or if a man beat her, whereby the childe dyeth in her body, and she is delivered of a dead childe, this is a great misprision, and no murder; but if the childe be born alive and dyeth of the potion, battery, or other cause, this is murder: for in law it is accounted a reasonable creature, *in rerum natura,* when it is born alive." (3 Coke, Institutes 58 [1648].)

This requirement that the child must be born alive to be the subject of the crime of homicide was well known throughout this country at the time Ohio adopted its first criminal statutes. If the General Assembly had desired to deviate from this common understanding it would have done so.

This court addressed itself to the issue of whether an unborn child could be the subject of a homicide in *Robbins* v. *State* (1857), 8 Ohio St. 131. Although that case involved a charge of murdering a pregnant woman by administering poison, the court, at page 192, stated:

"It was not charged in the indictment, in this case, that the crime consisted in killing the child of which Nancy Holly was pregnant. And had it been so charged, it could

---

change from 1935 to date, other than to change the name of the offense to homicide by vehicle in the first degree, and to specify the traffic law violations included.

'For a complete discussion of the common law status of a viable child see Means, The Law of New York Concerning Abortion and the Status of the Fetus, 14 N. Y. L. F. 411; Stern, Abortion: Reform and the Law, 59 J. Crim. Law, Criminology and Police Science, 84; Quay, Justifiable Abortion—Medical and Legal Foundations, 49 Georgetown L. J. 395; *Keeler* v. *Superior Court of Amador County* (1970), 2 Cal. 3d 619, 470 P. 2d 617.

not have amounted to the crime of murder; for, under our statute, neither degree of criminal homicide can be predicated upon the killing of an unborn child.''

Although that language was *obiter dictum* it is an unequivocal statement as to the scope of the criminal law in this state. At that time, and yet today, the General Assembly has not passed any laws covering feticide. Nor have they chosen to modify existing laws so as to include an unborn child in the category of persons against whom the crime of homicide could be committed. Despite the numerous amendments of the Ohio manslaughter statute, and the fact that a specific section was created to deal with vehicular homicide, the meaning of the word "person" has not been changed.

In *State* v. *Wells* (1945), 146 Ohio St. 131, the word, "person," as used in the Uniform Traffic Act of September 6, 1941, was determined to mean " * * * every person * * * all persons." In *State* v. *Martin* (1951), 154 Ohio St. 539 at 541, this court held that the word "another," as used in G. C. 6307-18, referred to "a particular person." That statute, which was part of the Uniform Traffic Act, read as follows:

"Whoever shall unlawfully and unintentionally kill another while engaged in the violation of any law of this state applying to the use or regulation of traffic, shall be guilty of manslaughter in the second degree." In concluding that the word "another" meant "a particular person," the court used the word to define itself, thus neither broadening nor narrowing its meaning. Consequently, the common-law requirement that the child be born alive remains as a limiting factor of the word "person," as used in R. C. 4511.181.

It is common knowledge that giant strides have been taken in medical technology during recent years. Where it was once impossible to determine the various stages of development of a fetus, such stages may be determined today with relative accuracy. An unborn fetus can be examined to determine its health while still in the womb, and

numerous infants survive premature birth and caesarian deliveries. These infants, having had the opportunity, have clearly demonstrated their viability, *i. e.,* ability to live independent of their mother.

This court has become part of the movement in the area of civil law which gives a viable fetus which survives birth a cause of action for injuries sustained while in the womb. *Williams* v. *Marion Rapid Transit* (1949), 152 Ohio St. 114; annotations, 10 A. L. R. 2d 1059, and 27 A. L.R. 2d 1256. We have also held that a viable infant who survives birth is a "person" within the meaning of the wrongful death statute (*Jasinsky* v. *Potts* [1950], 153 Ohio St. 529), and in an insurance contract (*Peterson* v. *Nationwide Mutual Ins. Co.* [1964], 175 Ohio St. 551). But even in the civil area, this court has not held that an infant, that does not survive independent of the mother for some period of time, has a cause of action.[5]

It must be noted, however, that the definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute. The result may be desirable, but criminal statutes, unlike civil statutes, must be construed strictly against the state. Thus, where two statutes do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings.

The law has long been clear that to establish the *corpus delecti* in the murder of a newborn child, the evidence must show that the infant was born alive. *Keeler* v. *Superior Court of Amador County* (1970), 2 Cal. 3d 619, 470 P. 2d 617; 40 American Jurisprudence 2d, 300, 498, 695. In the absence of a specific statute to the contrary, this same

---

[5]The Court of Appeals for Madison County, Ohio, has held that "a cause of action exists for the wrongful death of a viable unborn child which is subsequently stillborn." However, the motion to certify the record was dismissed by agreement of the parties. *Stidam* v. *Ashmore* (1959), 109 Ohio App. 431. For additional information concerning those jurisdictions which have allowed recovery in the civil area for the death of an unborn child, see annotation, 15 A. L, R. 3d 992.

element is essential for a conviction of vehicular homicide in Ohio. Since the evidence in this case does not indicate that the child was born alive, a conviction cannot stand.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, DUNCAN, CORRIGAN and LEACH, JJ., concur.