PEOPLE v GUTHRIE

Docket No. 44957. Submitted March 5, 1980, at Grand Rapids.—
Decided April 24, 1980. Leave to appeal granted, 409 Mich 924.

Thomas A. Guthrie was charged with negligent homicide arising
from the death of an unborn child in an automobile accident in
which the mother's abdomen struck her vehicle's steering
wheel. The Wexford Circuit Court, William R. Peterson, J.,
dismissed the charge on the grounds that the death of an
unborn fetus was not equivalent to the death of "another"
within the meaning of the negligent homicide statute. The
people appeal. *Held:*

It is not within the province of a court to change criminal
statutes. That is the function of the Legislature. "Another" in
the statute refers to "person", and within the definition of
"person" the Legislature has not included the unborn. The rule
which limits prosecutions for negligent homicide to cases in-
volving the death of someone "born alive" is archaic and
should be abolished, but that is a matter for the Legislature not
for a court.

Affirmed.

1. Criminal Law — Statutes — Courts.

Criminal statutes, unlike the common law, may not be expanded
by courts to meet new problems beyond the contemplation of
the Legislature when the statutes were enacted.

2. Homicide — Negligent Homicide — Unborn Child — Statutes.

An unborn fetus, even when viable, is not a "person" for purposes
of the negligent homicide statute; therefore, a defendant may
not be prosecuted for negligent homicide in the accidental
death of an unborn child (MCL 750.324; MSA 28.556).

References for Points in Headnotes
[1] 73 Am Jur 2d, Statutes § 295.
[2] 40 Am Jur 2d, Homicide § 9.
Homicide based on killing of unborn child. 40 ALR3d 444.
Right to maintain action or to recover damages for death of unborn
child. 40 ALR3d 411.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Burton Hines, Jr.,* Prosecuting Attorney (by *Thomas C. Nelson,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Samardich, Benson, McCurdy & Wotila, P.C., (Janet Tooley,* of Counsel), for defendant.

Before: ALLEN, P.J., and M. F. CAVANAGH and C. W. SIMON, JR.,* JJ.

PER CURIAM. Did the trial court err in dismissing a charge of negligent homicide, MCL 750.324; MSA 28.556, against defendant on grounds that the death of an unborn but viable nine month fetus was not equivalent to the death of "another" within the meaning of that term as used in the statute? This question of first impression in Michigan arises on the following facts.

On August 8, 1978, at approximately 5 p.m., defendant drove his pickup truck across four lanes of traffic on US 131 in Cadillac striking an automobile being driven by Brenda Tucker in the northbound curb lane. The collision caused Mrs. Tucker's abdomen to impact with her vehicle's steering wheel. At the time of the accident, Brenda Tucker was nine months pregnant and was scheduled to enter the hospital the next day in preparation for a caesarean delivery on August 10, 1978.

Shortly after the accident an emergency caesarean section was performed and a stillborn infant was delivered. Autopsy revealed the infant weighed seven pounds, was "ready for birth" with all organs "normal" except there had been no expansion of the lungs. The pathologist stated that

---

* Circuit judge, sitting on the Court of Appeals by assignmet.

he found no evidence of trauma directly to the infant but that the placenta and the vessels of the umbilical cord had been torn. Both the pathologist and the obstetrician who performed the caesarean stated that the infant had bled to death.

Defendant was charged with negligent homicide contrary to MCL 750.324; MSA 28.556. After being bound over to circuit court on the offense charged, defendant moved to quash the information on grounds that the statute did not apply to unborn fetuses. A hearing was held on the motion February 8, 1979, before Circuit Judge William R. Peterson. On March 15, 1979, Judge Peterson issued a written opinion granting defendant's motion on grounds that a fetus was not a "person" within the meaning of the negligent homicide statute.[1] Charges were dismissed against defendant by order entered April 30, 1979. The people appeal of right.

Michigan's negligent homicide statute reads:

"*Any person who,* by the operation of any vehicle

[1] "No appellate court of the United States or England has ever, as a matter of common law definition, treated a fetus as a person for the purposes of criminal law. There is no precedent holding that a fetus could be the subject of criminal assault or homicide. All precedent is to the contrary; see *Rex v Brain,* 6 C & P 349, 172 Eng Rep 1272 (1834), *Krichman v United States,* 256 US 363, 41 S Ct 514, 65 L Ed 992 (1921) and *Keeler v Superior Court,* 2 Col 3d 619, 470 P2d 617 (1970).

\* \* \*

"To expand statutory criminal definition by altering the common law definition of the terms contained therein is beyond the authority of the courts. It would also be inconsistent with the existing statutory scheme of the penal code. The Legislature has, for instance, defined the '*wilful* killing of an unborn quick child' by injury to the mother as manslaughter where the act would have been defined as murder of the mother had she died. If a fetus is now to be redefined as a 'person' for the purposes of the criminal common law, such an act would not be manslaughter but murder at the common law. So too, a mother causing an abortion of her fetus is presently not guilty of homicide and, indeed, is guilty of no offense at all. *In re Vickers,* 371 Mich 114 [123 NW2d 253] (1963); but she would be guilty of homicide were the definition of 'person' altered to include a fetus."

upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, *shall cause the death of another,* shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000.00, or by both such fine and imprisonment." (Emphasis supplied.)

The crucial word, the meaning of which we must determine, is the word "another". Because "another" refers back to the word "person", the question presented is whether an unborn but admittedly viable fetus is a "person" as that word is used in the statute. The statute was first enacted as 1921 PA 98, and was reenacted as 1931 PA 328. Since that time, it has been amended in minor respects not relevant to the question before us. From the date of the first enactment until the present time that portion of the statute which is emphasized above has remained unchanged.

The common-law rule, in effect when the statute was adopted in 1921, was that there could be no homicide without a living human being the victim. The killing of an unborn child was not a homicide at common law for the reason that the fetus was not considered a "person" or "a reasonable creature in being" before its birth. It was necessary that the child be "born alive" and exist independently of its mother's body before it could be considered a "person". Anno: *Homicide Based on Killing of Unborn Child,* 40 ALR3d 444, § 2, p 446, 40 Am Jur 2d, Homicide, § 9, p 300, *Keeler v Superior Court of Amador County,* 2 Cal 3d 619; 470 P2d 617; 87 Cal Rptr 481; 40 ALR3d 420 (1970). The history, development and continuing vitality of the "born alive" rule is well summa-

rized in LaFave & Scott, Criminal Law, § 67, pp 530-531 as follows:

*"When Does Life Begin?*

"It is a general requirement of the law of homicide that the victim be a living human being. Shooting a dead body is not homicide, although it may be another crime. *The question of life arises most frequently in the cases involving destruction of the human fetus.* At early common law the fetus was considered alive thirty to eighty days after conception. By the mid-seventeenth century, however, it was no crime to abort, with the consent of the mother, a fetus which had not 'quickened,' an event that occurs four to five months after conception. Even then, the killing of a fetus was not homicide unless the fetus had been 'born alive.' Being 'born alive' required that the fetus be totally expelled from the mother and show a clear sign of independent vitality, such as respiration, although respiration was not strictly required.

"In the United States the 'born alive' requirement has come to mean that the fetus be fully brought forth and establish an 'independent circulation' before it can be considered a human being. Proof of live birth and death by criminal agency are required beyond a reasonable doubt to sustain a homicide conviction. 'Independent circulation' can be established by evidence of the fetus having breathed, but such proof usually is not conclusive in the absence of the evidence of life, such as crying. * * *

"* * * The difficulty of proof of live birth has led some jurisdictions to define the fetus as a person for purposes of the homicide statute, or to define person so as to exclude the fetus." (Emphasis supplied, footnotes omitted.)

The people frankly admit the existence of the "born alive" rule, but urge that the time is long overdue for its rejection. In support of this position the people advance two arguments. *First,* for purposes of an action in tort, recent Michigan case

law has held that parents of an unborn but viable fetus may maintain a wrongful death action on behalf of the fetus. *O'Neill v Morse,* 385 Mich 130; 188 NW2d 785 (1971). More recently, in sustaining the constitutionality of the assaultive abortion statute[2] or the manslaughter by abortion statute,[3] a similar position was adopted.

"We hold that the word child as used in MCLA 750.322; MSA 28.544, and MCLA 750.323; MSA 28.555, means a viable child in the womb of its mother; that is, *an unborn child whose heart is beating, who is experiencing electronically measurable brain waves, who is discernably moving, and who is so far developed and matured as to be capable of surviving the trauma of birth* with the aid of the usual medical care and facilities available in the community." (Emphasis supplied.) *Larkin v Wayne Prosecutor,* 389 Mich 533, 541-542; 208 NW2d 176 (1973).

*Second,* the "born alive" rule is an archaic legal fiction which no longer serves a legitimate objective. Plaintiff's excellent brief expresses this point of view as follows:

"The emergence of viability as a medically distinct developmental stage has mooted the Hobson's choice between quickening and birth. In terms of an independent existence, viability is the most important event after conception. Quickening merely indicates a perception of movement and has virtually no significance from

---

[2] "The willful killing of an unborn quick child by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter." MCL 750.322; MSA 28.554.

[3] "Any person who shall administer to any woman pregnant with a quick child any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, shall, in case the death of such child or of such mother be thereby produced, be guilty of manslaughter." MCL 750.323; MSA 28.555.

a developmental perspective. Birth terminates gestation, but is simply a continuation of viability in a new environment. Once the fetus reaches viability, it is virtually indistinguishable, physiologically, from the newborn infant. * * *

"Moreover, birth itself is no longer a violent perilous adventure. Current statistics indicate that the fetal survival rate after twenty weeks of gestation is ninety-nine percent (99%). * * * This compares with an infant survival rate of 98.5%. Thus, after five months of pregnancy, survival is virtually certain, or at least as certain as survival through the first postnatal year.

"In this context, the 'live birth' rule is an anachronism. Its original expediency and practicality has evaporated in the light of modern science and experience. Only its arbitrary, inflexible character remains."

This panel agrees that the "born alive" rule is outmoded, archaic and no longer serves a useful purpose. Modern medical practice has advanced to the point that, unlike the situation when the rule was first developed, the vast majority of viable fetuses will, in the absence of some unexpected event, be born alive and healthy. Further, medical technology can now accurately determine the stages of fetal development and viability. This being so, birth itself in terms of emergence from the mother's body should no longer be held determinative. We further acknowledge that for purposes of actions in tort for wrongful death, recovery may be had even if a viable fetus was yet unborn.

But our concession in these respects does not lead us to conclude that it is within the province of this Court to reverse the trial court. It is one thing to mold, change and even reverse established principles of common law in civil matters. It is quite another thing to do so in regard to criminal statutes. As long ago as 1886 the Supreme Court

stated that "[w]hatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law should not be tampered with except by legislation". *In the Matter of Eugene Lamphere,* 61 Mich 105, 108; 27 NW 882 (1886). Almost 100 years later this Court reaffirmed the same rule of construction saying:

"Criminal statutes, in contrast with the common law, may not be expanded to meet new problems beyond the contemplation of the Legislature when the statute was enacted." *People v Otis Adams,* 34 Mich App 546, 573; 192 NW2d 19 (1971), *aff'd in part* 389 Mich 222; 205 NW2d 415 (1973).

See also *People v Gilbert,* 88 Mich App 764, 768; 279 NW2d 546 (1979).

When the Legislature enacted the negligent homicide statute in 1921 and reenacted it in 1931, the "born alive" rule was a well understood and accepted rule of law. At that time and in subsequent years, the Legislature had the opportunity to include unborn fetuses in the statute, but did not do so. The Legislature has, however, enacted the assaultive abortion and manslaughter abortion statutes cited earlier in this opinion.[4] Both statutes specifically refer to fetal deaths. The fact that the Legislature would refer to a fetus in two statutes but not in the negligent homicide statute is strongly persuasive that the Legislature did not intend that a viable fetus is a "person" within the meaning of that term in the statute.[5]

---

[4] See footnotes 2 and 3, *supra.*

[5] The assaultive abortion statute was enacted at the same time, and in the same public act, as the reenactment of the negligent homicide statute. 1931 PA 328, §§ 322, 324. This is particularly significant since the assaultive abortion statute designates that the willful killing of an unborn quick child constitutes the crime of manslaughter only if the injury to the mother by which the fetus dies would constitute *murder* if the mother had died. Since the negligent homicide statute applies

The reluctance of the judiciary to reject the "born alive" rule in situations involving charges brought against a defendant under a criminal statute is found in decisions from other jurisdictions. In *Keeler v Superior Court of Amador County, supra,* the Supreme Court of California rejected the people's argument that scientific advances in obstetrics and pediatrics justified the court in construing the term "human being" in a statute defining murder to include a viable but yet unborn fetus.

"Applying these rules to the case at bar, we would undoubtedly act in excess of the judicial power if we were to adopt the People's proposed construction of section 187. * * * For a court to simply declare, by judicial fiat, that the time has now come to prosecute under section 187 one who kills an unborn but viable fetus would indeed be to rewrite the statute under the guise of construing it. Nor does a need to fill an asserted 'gap' in the law between abortion and homicide—as will appear, no such gap in fact exists—justify judicial legislation of this nature: to make it 'a judicial function "to explore such new fields of crime as they may appear from time to time" is wholly foreign to the American concept of criminal justice' and 'raises very serious questions concerning the principle of separation of powers.' " 2 Cal 3d at 632-633.

In *State v Dickinson,* 23 Ohio App 2d 259; 263 NE2d 253 (1970), the court was asked to construe a homicide by vehicle statute whose provisions are

under the facts in this case, and any resulting death to the mother would only constitute negligent homicide (a 2 year misdemeanor) and not murder, it follows that the Legislature must have specifically considered and rejected the application of the feticide statute under these circumstances.

For an appropriate application of this precise statutory provision, see *Tiner v State,* 239 Ark 819, 826; 394 SW2d 608, 612 (1965).

strikingly similar to the Michigan statute.[6] The question involved was whether a viable but unborn fetus of a seven-month pregnant woman was a "person". The trial court had answered that question in the affirmative based upon Ohio decisions that for purposes of civil injury cases the word "persons" included unborn viable fetuses. The Court of Appeals reversed, saying:

"We feel bound to distinguish those civil cases from criminal prosecutions for homicide.

\* \* \*

"In summary, since we find the word 'person' to have had at the time of its use by the Legislature a clear cut common law meaning, and since the Legislature did not otherwise define the word, we feel the more appropriate rule is set forth in the opinion of the case of *In re Torok,* 161 Ohio St 585, at 589 [120 NE2d 307, at 310 (1954)], by Chief Justice Weygandt:

" 'As this court has repeated in numerous cases involving statutory construction, the question is not what did the General Assembly intend to enact but what is the meaning of that which it did enact. *Slingluff v Weaver,* 66 Ohio St 621, 64 NE 574 [1902].'

"Until the Legislature of this state amends the homicide statutes so as to expressly include as the object of their protection a viable unborn fetus, we feel compelled to hold that an unborn fetus, viable or otherwise, has not been made the subject of homicide under RC 4511.181." 23 Ohio App 2d at 260-261.

Directly on point, and for practical purposes indistinguishable from the case before us, is *State v Larsen,* 578 P2d 1280 (Utah, 1978). In that case, defendant, while driving in excess of 100 miles an

---

[6] *"No person* shall unlawfully and unintentionally cause the death *of another* while violating Section 4511.19, 4511.20, 4511.201 or 4511.251 of the Revised Code. Any person violating this section is guilty of homicide by vehicle in the first degree." Ohio Rev Code, § 4511.181 (Emphasis supplied.)

hour and under the influence of alcohol, collided with another car in which a woman 26 weeks pregnant was riding. The collision caused the death of the unborn fetus. Defendant was charged under a Utah negligent homicide statute similar to the Michigan statute.[7] After stating that the question on appeal was "whether the Legislature intended to include an unborn fetus within the definition of 'another' " (this being the same issue in the case before us), the court concluded:

"Against this background, the State urges this Court to find that the time has come to recognize that a fetus is a human being under the homicide statutes, though the Legislature has not specifically stated that it is to be so considered. In the absence of statute, the terms 'person', 'human being', 'another' (in the context of 'person') do not include an unborn fetus for purposes of the crime of homicide. After the California Supreme Court in *Keeler, supra,* found that the term 'human being' did not include a viable but unborn fetus, the California Legislature passed a feticide statute. *If the Utah Legislature wishes to pass this type of statute, it should do so in clear and specific language.*" 578 P2d at 1282 (Emphasis supplied.)

The people contend that *Dickinson* and *Larson, supra,* are distinguishable because at the time of the decisions the Supreme Courts of those states had not recognized an unborn fetus as a person in civil actions for wrongful death. We disagree. As already noted, in *Dickinson,* the Ohio Court of Appeals had so held and, by 1978 when *Larson* was decided, a majority, though slight, of the

[7] "Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, *causes the death of another* by operating a motor vehicle in a negligent manner." Utah Code, § 76-5-207. (Emphasis supplied.)

states recognized tort actions in civil suits for injuries to a viable fetus. Prosser, Torts, § 55, p 338 (4th ed, 1971). Further, in a decision announced 12 days prior to oral argument in the instant case, the Illinois Supreme Court refused to rule that an unborn fetus was an "individual" under a statute providing that a "person who kills an individual without lawful justification commits murder". Ill Rev Stat 1977, ch 38, ¶ 9-1(a), *People v Greer,* 79 Ill 2d 103; 402 NE2d 203 (1980). In so doing, the court rejected the claim of the prosecution that, because Illinois allowed wrongful death actions for the death of a viable fetus, it should recognize a viable fetus as an "individual" under the criminal statute.

"Equally significant, these opposing tendencies to protect the fetus in some instances and not in others have long coexisted. The common law that protected certain property rights of the fetus also declined to apply the penalties for homicide to one who destroyed the fetus. As earlier noted, American courts which have extended the benefits of tort law to fetuses have also, in the absence of specifically inclusive statutory language, uniformly refused to change the born-alive rule in criminal cases, four of them within the last 10 years. We do not imply that this divergence between tort law and criminal law is necessarily inconsistent. Differing objectives and considerations in tort and criminal law foster the development of different principles governing the same factual situation." 79 Ill 2d at 114-115; 402 NE2d at 208-209.

For the foregoing reasons, the trial court's order dismissing the charge of negligent homicide against defendant must be affirmed.[8] Although we find that the "born alive" rule is archaic and

[8] Though the criminal case against defendant would be dismissed, Brenda Tucker may still pursue her claim for damages under the wrongful death statute.

should be abolished in prosecutions brought under the negligent homicide statute, the abolition of the rule is a matter for action by the Legislature. For this Court to interpret the statute to include unborn viable fetuses as persons would usurp the Legislature's traditional power of defining what acts shall be criminal and would be contrary to the decisions from other jurisdictions cited herein. Respectfully, we urge the Legislature to make the necessary amendments to the statute.

Affirmed.