STATE

v.

William AMARO.

No. 81–38–M.P.

Supreme Court of Rhode Island.

Aug. 6, 1982.

Dennis J. Roberts II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for plaintiff.

Dolbashian, Chappell, Chace & Forte, Paul M. Chappell, Portsmouth, Mandell, Aisenberg & Goodman, Martin W. Aisenberg, Mark S. Mandell, Providence, for American Civil Liberties Union as amicus curiae.

## OPINION

MURRAY, Justice.

On February 21, 1979, an automobile driven by the defendant, William Amaro, collided with a vehicle driven by Kathleen Kenney, who was nine-months pregnant at the time. Immediately after the accident Mrs. Kenney was taken to Newport Hospital where she delivered a stillborn female fetus.

On September 11, 1979, defendant was charged by information with violating G.L. 1956 (1969 Reenactment) § 31–27–1, as amended by P.L.1978, ch. 208, § 2, the Rhode Island vehicular-homicide statute. On November 14, 1979, defendant filed a motion to dismiss the information. The trial justice denied the motion, and defendant filed a petition for a writ of certiorari, which we granted on February 26, 1981.

The question presented by this case is a narrow one—whether a fetus is a "person" within the meaning of § 31–27–1. The statute, entitled "Driving so as to endanger, resulting in death," provides in pertinent part:

> "(a) When the death of any person ensues as a proximate result of an injury received by the operation of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle

shall be guilty of 'driving so as to endanger, resulting in death.'"

The defendant argues that there is nothing in Rhode Island case or statutory law which would support the view that the term "person" in a criminal statute may be construed to mean a fetus. To do so, defendant asserts, would be to deprive him of fair warning of the conduct that the Legislature meant to proscribe when it enacted § 31–27–1; thus, his conviction under that statute would infringe upon the due-process rights guaranteed by the Fourteenth Amendment to the United States Constitution. The defendant also points out that although a different Superior Court justice reached an opposite conclusion in a criminal case involving § 31–27–1 in 1971, the Legislature did not act to amend § 31–27–1. The defendant further notes that the Legislature did, however, enact G.L.1956 (1981 Reenactment) § 11–23–5, as enacted by P.L.1975, ch. 231, § 1, which made it a crime willfully to kill "an unborn quick child" under certain circumstances. The defendant also argues that the Legislature has demonstrated its willingness to include the unborn quick child within the definition of "person" but did not do so. This lack of action, defendant contends, supports his position that the term "person" in § 31–27–1 does not include a fetus.

In its brief, the state argues that the trial justice's decision is supported by *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976) (holding that an unborn fetus was a "person" under the Rhode Island wrongful-death statute whether or not the fetus was viable at the time of the injury). We are also urged to reject defendant's "fair warning" argument on the ground that his conduct was criminal regardless of the nature or age of the victim. The state urges us to extend the holding in *Presley* to § 31–27–1 and to uphold the trial justice's refusal to dismiss the criminal information against defendant.

A brief was also filed in this matter by the American Civil Liberties Union, Rhode Island Affiliate (ACLU), as amicus curiae. The ACLU argues that since § 31–27–1 is a

penal statute, it must be strictly construed and that any ambiguity about whether the offense charged falls within the ambit of the statute must be resolved in favor of the defendant. The ACLU argues that this court's decision in *Presley*, interpreting a civil wrongful-death statute, cannot be used to interpret the term "person" in a criminal statute, for words in remedial statutes are construed in their broad and general sense whereas words in penal statutes must be read narrowly. The ACLU further argues that at the time the Legislature enacted § 31–27–1 in 1950, the accepted common-law notion was that a fetus was not a "person" and could not be the subject of a prosecution for homicide unless it was first born alive. Finally, the ACLU points out that the Legislature had indicated that it is capable of distinguishing between an unborn child and a person born alive since it has enacted statutes—concerning workers' compensation and feticide—which acknowledge this distinction. For these reasons the ACLU concludes that the term "person" in the vehicular-homicide statute could not have been intended by the Legislature to mean an unborn fetus.

Clearly, the dispositive question in this case is whether the term "death of any person," as employed in § 31–27–1, includes the death of a fetus. The state correctly notes in its brief that a related issue was addressed by the plurality opinion in *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976). However, the state's argument that *Presley* is analogous to the instant case fails to account for an important distinction between the two cases.

General Laws 1956 (1969 Reenactment) § 10–7–1, the wrongful-death statute construed in *Presley*, was remedial in nature, and was thus properly subject to a liberal application. *State v. Simmons*, 114 R.I. 16, 327 A.2d 843 (1974). *See Coletta v. State*, 106 R.I. 764, 263 A.2d 681 (1970). In the instant case, however, we are concerned with a statute that is clearly penal in nature. Section 31–27–1 must therefore be narrowly construed and defendant must be given the benefit of any reasonable doubt as to whether the act charged is within the

meaning of the statute. *State v. Dussault*, R.I., 403 A.2d 244 (1979); *State v. Simmons*, 114 R.I. 16, 327 A.2d 843 (1974).

In making this determination it is important to examine the state of the existing law when § 31–27–1 was enacted since the Legislature is presumed to be familiar both with this court's holdings, *Little v. Conflict of Interest Commission of Rhode Island*, R.I., 397 A.2d 884 (1979), and with the common law affecting the subject of the legislation. *Loretta Realty Corp. v. Massachusetts Bonding & Insurance Co.*, 83 R.I. 221, 114 A.2d 846 (1955).

At common law, there could be no criminal conviction for homicide unless the fetus had been "born alive"; in other words, the fetus must have been totally expelled from the mother and have shown clear signs of independent vitality. *See, e.g., Keeler v. Superior Court*, 2 Cal.3d 619, 470 P.2d 617, 87 Cal.Rptr. 481 (1970); *People v. Greer*, 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); *State v. Dickenson*, 23 Ohio App.2d 259, 263 N.E.2d 253 (1970), *aff'd*, 28 Ohio St.2d 65, 275 N.E.2d 599 (1971); *People v. Guthrie*, 97 Mich.App. 226, 293 N.W.2d 775 (1980); *State v. Larsen*, 578 P.2d 1280 (Utah 1978). *See also, Roe v. Wade*, 410 U.S. 113, 161–62, 93 S.Ct. 705, 731, 35 L.Ed.2d 147, 182 (1973). *See generally*, J. Dellapenna, *The History of Abortion: Technology, Morality, and Law*, 40 Univ.Pitt.L. Rev. 359 (1979).

The born-alive rule was well established at common law and had been indirectly acknowledged by this court by the time § 31–27–1 was enacted in 1950. *See Gorman v. Budlong*, 23 R.I. 169, 173–74, 49 A. 704, 706 (1901). It may be inferred, therefore, that the Legislature would have expressly deviated from the common-law born-alive meaning of "person" had it meant to do so.

This inference is further supported by the fact that the Legislature has in fact enacted legislation affecting the rights and status of fetuses in other statutory contexts. For example, the Workers' Compensation Act was amended to provide that an injured

employee could recover compensation benefits for "any children of the injured employee conceived but not born at the time of the employee's injury." General Laws 1956 (1979 Reenactment) § 28–33–17(c). Similarly, in 1975, the Legislature enacted a feticide statute that provided that "[t]he wilful killing of an unborn quick child by any injury to the mother of such child which would be murder if it resulted in the death of such mother" or the abortion of such a child, except where necessary to preserve the life of the mother, would constitute the crime of manslaughter. Section 11–23–5, as enacted by P.L.1975, ch. 231, § 1. The fact that the Legislature referred to unborn children in the foregoing two statutes but not in the vehicular-homicide statute strongly supports the conclusion that the Legislature did not intend to change the common-law meaning of the term "person" in that statute.

The defendant's motion to dismiss the information confronted the trial justice with the difficult task of resolving a highly sensitive issue of first impression in this state. Although we are constrained, by established rules of statutory construction and by the existing state of the law, to reverse the trial justice's decision, we are not unmindful of his rationale and sincere conviction.

In 1970 the California Supreme Court was also faced with this issue and held, for reasons similar to our own, that a fetus was not a "human being" within the meaning of the statute defining murder. *Keeler v. Superior Court*, 2 Cal.3d 619, 470 P.2d 617, 87 Cal.Rptr. 481 (1970). It is interesting to note that the California Legislature soon after created a new category of murder victim for the unborn child. Cal.Penal Code § 187, as amended by Cal. Stats. 1970, ch. 1311, p. 2440, § 1 (West Supp. 1982). *See Justus v. Atchison*, 19 Cal.3d 564, 579, 565 P.2d 122, 131–32, 139 Cal.Rptr. 97, 106–07 (1977). In Rhode Island, as well as in California, it is only by legislative action that the unborn child will acquire the status and protection under our criminal statutes which are thus far denied by common law and rules of statutory interpretation.

We hold, therefore, that a fetus is not a "person" within the meaning of § 31–27–1 and that the information charging the defendant under that statute should have been dismissed. In view of this holding we need not consider the other arguments raised by the defendant.

For the foregoing reasons the defendant's petition for certiorari is granted. The decision denying the defendant's motion to dismiss is reversed, the order entered thereon is quashed, and the case is remanded to the Superior Court with directions to dismiss the information.

KELLEHER, Justice, concurring.

I concur with the result reached by my colleague, Mrs. Justice Murray, and would merely repeat what I said earlier when in dissenting in *Presley v. Newport Hospital*, 117 R.I. 177, 193, 365 A.2d 748, 756 (1977), I took the position that the General Assembly, in enacting our civil wrongful death statute, never intended that a stillborn fetus was to be considered a person within the context of that statute. What I said in *Presley* applies with equal force to our vehicular homicide statute. The resolution, if any, for the issue presented in the present appeal should take place in the General Assembly, where the Legislature, if it wishes to impose criminal liability for the death of an unborn child, can determine at what point in the development of the fetus criminal sanctions will be applied.