No. 60,775

STATE OF KANSAS, *Appellant*, v. STEPHEN J. TRUDELL, *Appellee*.

(755 P.2d 511)

Opinion filed April 29, 1988.

*Deborah S. Wilkinson*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with her on the brief for appellant.

*Michael Barbara*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by the State pursuant to K.S.A. 1987 Supp. 22-3602(b)(1) from the district court's dismissal, upon defendant Stephen Trudell's motion, of one count of aggravated vehicular homicide, K.S.A. 1987 Supp. 21-3405a.

This criminal prosecution grew out of the following facts: On the afternoon of June 29, 1986, Stephen Trudell was driving his car at a high rate of speed, trying to elude a pursuer with whom Trudell had fought after the pursuer and others had ejected him

from a Wichita private club. In his haste, Trudell drove into the rear end of a pickup truck driven by Rickie Brixius, in which Patricia Brixius was a passenger. The collision caused the truck to smash into a light pole, propelling Patricia, who was approximately 25 weeks pregnant, from the truck. She was taken to a hospital for examination. The hospital staff discovered bruises on her abdomen. A fetal heartbeat was found at the time of the first examination, but all fetal activity had stopped by nightfall. After a stillborn birth of the fetus on July 2, 1986, it was determined that abnormal trauma to Patricia's stomach had torn the placenta, blocking the blood supply to the fetus and resulting in its death. There was medical testimony the fetus had been viable before the accident.

Trudell was found to have a .208% alcohol level in his blood. He stipulates for the purpose of his motion to dismiss that there is a causal relationship between his operation of the motor vehicle while under the influence of alcohol and the death of the fetus.

Trudell was charged with one count of driving under the influence, a class A misdemeanor, K.S.A. 1987 Supp. 8-1567; and one count of aggravated vehicular homicide, a class E felony, K.S.A. 1987 Supp. 21-3405a.

Trudell moved for dismissal of the aggravated vehicular homicide count on the ground the facts did not support a cause of action under which he could be legally convicted. The district court heard the motion on March 6, 1987, and took it under advisement. The preliminary hearing was scheduled for March 13, 1987. Since the court had not reached a decision on the motion to dismiss by that date, it continued the preliminary hearing. The State objected to a continuation of the preliminary hearing and asked that the motion not be decided until after the preliminary hearing. The court overruled the objection on the grounds a preliminary hearing is a right accorded a defendant and not the State.

On April 2, 1987, Trudell waived his preliminary hearing. On the same day, the court dismissed the aggravated vehicular homicide charge with prejudice. The court then granted the State's motion to dismiss the driving under the influence charge without prejudice. The State appealed the dismissal of the aggravated vehicular homicide count.

The issue on appeal is whether the district court erred in ruling a viable fetus is not a "human being" within the meaning of the aggravated vehicular homicide statute, K.S.A. 1987 Supp. 21-3405a, which reads:

"(1) Aggravated vehicular homicide is the unintentional killing of a human being, without malice, which is done while committing a violation of K.S.A. 8-1566, 8-1567 or 8-1568, and amendments thereto, or the ordinance of a city which prohibits any of the acts prohibited by those statutes."

Under the common law, a human fetus was not a human being. Note, *Judicial Recognition of Feticide: Usurping the Power of the Legislature?*, 24 J. Fam. L. 43, 45 (1985-86). American case law accepted the common-law rule that the killing of a fetus was not criminal homicide unless it was born alive and then died of injuries inflicted prior to birth (the "born alive rule"). See the discussions in *Keeler v. Superior Court*, 2 Cal. 3d 619, 87 Cal. Rptr. 481, 470 P.2d 617 (1970); *Commonwealth v. Cass*, 392 Mass. 799, 805, 467 N.E.2d 1324 (1984); see Temkin, *Prenatal Injury, Homicide, and the Draft Criminal Code*, 45 Cambridge L.J. 414 (1986); Note, *Criminal Law—Feticide—The Unborn Child as a "Human Being,"* 45 Tul. L. Rev. 408 (1971).

The adoption of the born alive rule by the courts was prompted in part by the state of medical science. At that time science was unable to accurately establish the cause of fetal death. The high rate of prenatal mortality raised a presumption the fetus would not have been born alive in any event. See 24 J. Fam. L. at 45; Forsythe, *Homicide of the Unborn Child: The Born Alive Rule and Other Legal Anachronisms*, 21 Val. U.L. Rev. 563, 567-80 (1987).

Kansas, however, early on modified the common-law rule by enacting a statute which made the killing of a viable fetus a homicide. Kansas' first statute on the subject adopted the language of New York's special feticide statute, which was the first to modify the common-law rule in the United States. The Kansas statute provided:

"The wilful killing of any unborn quick child, by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter in the first degree." Kan. Terr. Stat. 1855, ch. 48, § 9.

This statute was in effect continuously from 1855 to 1969. See R.S. 1923, 21-409; G.S. 1949, 21-409; K.S.A. 21-409 (Corrick).

In 1969 the legislature repealed the entire criminal code and enacted a new code. L. 1969, ch. 180. The new code does not contain a statutory equivalent to former K.S.A. 21-409 (Corrick). It contains five homicide statutes: first-degree murder, K.S.A. 21-3401; second-degree murder, K.S.A. 21-3402; voluntary manslaughter, K.S.A. 21-3403; involuntary manslaughter, K.S.A. 1987 Supp. 21-3404; and vehicular homicide, K.S.A. 21-3405. All five of these statutes refer to the homicide victim as a "human being." Thus, for Kansas to have a criminal statute pertaining to the killing of a human embryo or fetus, other than for abortion, K.S.A. 21-3407, the term "human being" would have to apply.

There is no court decision in this state holding a viable fetus to be a "human being". However, in *State v. Burrell,* 237 Kan. 303, 699 P.2d 499 (1985), with facts quite similar to the case at bar, we made a statement upon which the State relies. There, the criminal defendant killed a woman and her eighth-month viable fetus when he ran a stop sign while under the influence of alcohol. He was charged with two counts of involuntary manslaughter; one count for the death of the woman, and the other count for the death of her viable fetus. The only issue on appeal was whether the trial court erred in finding involuntary manslaughter had not been committed because the element of wantonness was not present. In dictum, however, we stated, "It was clearly established through the evidence at the preliminary hearing that the defendant had committed an unlawful act not amounting to a felony, namely, running a stop sign contrary to K.S.A. 8-1528, which resulted in the unintentional killing of two human beings." 237 Kan. at 306.

We also had occasion in *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962), to decide whether an action could be maintained for the wrongful death of a viable unborn child under our former wrongful death statute, G.S. 1949 60-3203 (1959 Supp.). The statute read in part:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter or his personal representative if the former might have maintained an action had he lived against the latter for an injury for the same act or omission."

The facts in *Hale* were also similar to the instant case. A pregnant woman lost a viable fetus because of a car accident. We determined that the question under the statute was whether the unborn child would have been able, had it lived, to bring an action for injuries inflicted upon him before he was born. After noting other jurisdictions differed in whether such an action could be brought in the absence of specific statutory language allowing a right of action for prenatal injuries, we determined such a right existed in Kansas and therefore the parents had the right to bring the wrongful death action. We thus joined quite a number of courts which have allowed wrongful death actions involving an unborn child despite lack of specific statutory language, beginning with *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949). See, *e.g., White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964); see Comment, *Criminal Law—Viable Fetus is Person for Purposes of Massachusetts Vehicular Homicide Statute,* 19 Suffolk U.L. Rev. 145, 147 (1985).

G.S. 1949, 60-3203 (1959 Supp.) was reenacted in 1963 as our present K.S.A. 60-1901, which reads as follows:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived, in accordance with the provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased."

We note the legislature changed, without further explanation, the word "one" to "person" in the reenacted statute. The State argues the legislature adopted, in reenacting the statute, our holding in *Hale* and that, therefore, the word "person" in our present wrongful death statute includes an unborn viable fetus. It then argues it is illogical to consider a fetus a "person" under K.S.A. 60-1901, but not to consider the same fetus a "human being" under K.S.A. 1987 Supp. 21-3405a. It notes that, in ordinary language, "person" and "human being" are synonymous. Ordinary words are to be given their ordinary meaning in construing a statute. *State v. Thompson,* 237 Kan. 562, 566, 701 P.2d 694 (1985). The State argues the reason the legislature did not reenact our feticide statute, K.S.A. 21-409 (Corrick), in its 1969 revision of the criminal code was that in its reenactment of

the wrongful death statute after *Hale* it intended the term "person" or "human being" to at all times include a fetus. The State makes a persuasive argument deserving serious consideration.

It is indeed presumed that the legislature acts with full knowledge as to judicial decisions on prior law. *State v. Coley*, 236 Kan. 672, 675, 694 P.2d 479 (1985). However, our largest hurdle is that a criminal statute, with its punitive effect, cannot be construed liberally for the State. The rule of strict construction of penal statutes against the State and for the accused is, according to Justice Marshall, "not much less old than construction itself." *United States v. Wiltberger*, 18 U.S. (5 Wheat) 76, 95, 5 L. Ed. 37 (1820). Whereas a tort statute may be construed liberally in order to give effect to its remedial purpose, we may not give a different meaning to a word in a criminal statute than that word usually possesses. The word should not be given a meaning which leads to uncertainty or confusion if it is possible to construe it otherwise. *State v. Thompson*, 237 Kan. at 566; *State v. Dubish*, 234 Kan. 708, 712, 675 P.2d 877 (1984). See 19 Suffolk U.L. Rev. at 148-49.

Thus, the issue is clearly presented. Does the dictum in *Burrell* and our holding in *Hale*, a civil action construing G.S. 1949, 60-3203 (1959 Supp.), provide the necessary precedent for us to give a liberal construction to a criminal statute?

The matter of the rights of a fetus in vehicular homicide cases has been the subject of much litigation and research. See 19 Suffolk U.L. Rev. 145. The majority of jurisdictions which have confronted the issue has followed *Keeler*, 2 Cal. 3d 619, in holding the term "fetus" does not fall within the definition of a human being under criminal statutes unless the term is so defined by the legislature. The court in *State v. Dickinson*, 28 Ohio St. 2d 65, 275 N.E.2d 599 (1971), reversed a conviction of vehicular homicide, rejecting the district court's reasoning that prior cases defining fetuses as "persons" for purposes of civil personal injury cases necessitated the same definition under the penal statute.

The same issue was presented in *People v. Greer*, 79 Ill. 2d 103, 402 N.E.2d 203 (1980), with the State claiming that, because a fetus was recognized as a "person" in tort law when the State's criminal code was enacted, the legislature must therefore have

considered a viable fetus to be a "human being" under the homicide statute. In rejecting this argument, the court pointed out the law has had a long history of protecting the fetus under some circumstances, such as in property cases, but not in others. 79 Ill. 2d at 112-15. See *Keeler*, 2 Cal. 3d at 638-39.

In *State v. Amaro*, 448 A.2d 1257 (R.I. 1982), the court rejected the same argument to the effect that, because it had previously construed "person" to include a viable fetus in a tort action, it must do so in a criminal case. The court held a statute in a civil case may properly be liberally construed to effect the remedy sought while a penal statute must be narrowly construed under due process to protect the rights of the accused.

In *State v. Soto*, 378 N.W.2d 625 (Minn. 1985), the court held the state's vehicular homicide statute did not include a viable fetus within the statutory phrase "human being," also rejecting the State's argument that such a decision would be inconsistent because the court had previously recognized a wrongful death action for a viable fetus. The court held the different purposes of civil and criminal statutes necessitate different rules of construction. See Comment, *Feticide: Murder in Kentucky?* 71 Ky. L.J. 933, 947-48 (1982-83).

The Massachusetts and South Carolina Supreme Courts are the only courts of last resort which have to this date recognized feticide in the absence of a specific statute. See 24 J. Fam. L. at 53-58.

The Massachusetts court had earlier decided a viable fetus would be considered a "person" for purposes of the State's wrongful death statute. The court held, because the legislature was presumed to have knowledge of its previous decision and "person" is synonymous with "human being", "[i]n the absence of any indication that the Legislature directed its attention to the problem," a fetus was considered to be protected under the criminal code in order to maintain consistency with the earlier civil decision. *Commonwealth v. Cass*, 392 Mass. at 801-04.

The South Carolina court was also influenced by its earlier decision, twenty years previously, that a wrongful death action could be maintained for a viable fetus. The court felt consistency demanded the same definition under the civil and criminal statutes. *State v. Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984).

Several states have since declined to follow the reasoning of these two courts. See *People v. Vercelletto*, 135 Misc. 2d 40, 514 N.Y.S.2d 177 (1987); *State ex rel. Atkinson v. Wilson*, _____ W. Va. _____, 332 S.E.2d 807 (1984); *Meadows v. State*, 291 Ark. 105, 722 S.W.2d 584 (1987).

However, in spite of the liberal construction they gave their criminal codes, both the Massachusetts and South Carolina courts agreed that their definitions of "person" to include a fetus under their state homicide statutes could not, under due process, be applied retroactively.

The retrospective application of an unforeseeable judicial enlargement of a criminal statute violates a criminal defendant's due process right to advance notice as much as would the retrospective application of a new statute. *Bouie v. City of Columbia*, 378 U.S. 347, 12 L. Ed. 2d 894, 84 S. Ct. 1697 (1964). Such an enlargement would have the same effect as an ex post facto law forbidden by Article I, Section 10 of the United States Constitution.

It was concern for due process and the separation of powers which caused most courts faced with the present issue to find no criminal liability in the absence of action by the legislature. The leading case of *Keeler*, 2 Cal. 3d 619, held a construction of a criminal statute to include a viable fetus within the meaning of the term "human being" exceeds judicial power and denies the defendant due process of law. The court held that making a person criminally liable for the killing of a fetus was a legislative function since criminal law is statutory. See *State v. McCall*, 458 So. 2d 875 (Fla. Dist. App. 1984); *State v. Brown*, 378 So. 2d 916 (La. 1979); *State v. Larsen*, 578 P.2d 1280 (Utah 1978); *State v. Dickinson*, 28 Ohio St. 2d 65; see generally 21 Val. U.L. Rev. at 604.

The Michigan Court of Appeals, when faced with the issue, felt the common-law rule was outmoded due to medical advances, but held itself bound to follow common-law in the absence of a statute specifically defining the act as criminal. The court noted, "It is one thing to mold, change, and even reverse established principles of common-law in civil matters. It is quite another thing to do so in regard to criminal statutes." *People v. Guthrie*, 97 Mich. App. 226, 232, 293 N.W.2d 775 (1980), *app. denied* 417 Mich. 1006 (1983).

As the district court in the instant case observed, if it is the desire of the people in Kansas to give the same protection to a fetus as it gives to a human being, it is the legislative branch which is the proper forum to resolve the issue. It is in that forum that the Constitutions require the issue to be addressed and it is that forum in which proper debate may go on. See Justice Wilkins' dissent in *Commonwealth v. Cass*, 392 Mass. at 808.

The legislatures in several states have responded to judicial decisions on the issue in this case by enacting feticide statutes. The California Legislature, after *Keeler*, enacted a statute which provides, "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Cal. Penal Code § 187(a) (West 1988 Supp.); *cf. People v. Carlson*, 37 Cal. App. 3d 349, 112 Cal. Rptr. 321 (1974). Utah and Louisiana have also, in response to judicial decisions, amended their criminal statutes in order to punish the killing of a fetus. La. Rev. Stat. Ann. § 14:2(7) (West 1986); Utah Code Ann. § 76-5-201(1) (1983 Supp.); see *State v. Gyles*, 313 So. 2d 799 (La. 1975).

In the 1987 Kansas legislative session, bills were introduced in the House and Senate which would make criminal certain actions resulting in injury or death to an unborn child. Section 2(a) of the proposed act (Senate Bill 110; House Bill 2277) states:

"Criminal vehicular operation resulting in death to an unborn child is operating a vehicle in a grossly negligently manner or in a manner while under the influence of alcohol or drugs, or a combination of alcohol and drugs, in violation of K.S.A. 8-1567 and amendments thereto which result in death to an unborn child."

Section 2 (b) provides: "Criminal vehicular operation resulting in death to an unborn child is a class E felony." Both bills were referred to the Judiciary Committees during the 1987 legislative session. On January 27, 1988, the Senate Judiciary Committee recommended Senate Bill 110 not be passed. As of March 17, 1988, House Bill 2277 was still in committee.

The effect of such an act, if passed, would be to return to the pre-1969 modification of common-law in making the purposeful killing of a fetus a crime. The proposed bill would go further, however, in that proposed Section 1(d) defines "unborn child" as "the unborn offspring of a human being from the time of con-

ception until birth." This would be a departure from previous Kansas law in that the fetus would not have to be viable before harm to it would be considered a crime. "Viability" refers to the physiological capability of the fetus to live outside the womb. Black's Law Dictionary 1404 (5th ed. 1979). See Note, *A Century of Change: Liability for Prenatal Injuries*, 22 Washburn L.J. 268 (1983). A fetus generally reaches viability at between 24 to 28 weeks' gestation. See 21 Val. U.L. Rev. at 569. The proposed legislative bills show the Kansas Legislature is aware of the failure of K.S.A. 1987 Supp. 21-3405a to make specific provisions for the protection of a fetus.

For the foregoing reasons, we hold the district court did not err in ruling that the term "human being" in K.S.A. 1987 Supp. 21-3405a does not include a fetus.

The State raises an additional issue in its brief, although it does not list it separately as required by Supreme Court Rule 6.02(e) (1987 Kan. Ct. R. Annot. 24). The State argues the district court was required to honor its request that a preliminary hearing be held before the court ruled on Trudell's motion to dismiss the count of aggravated vehicular homicide. The State's only citation in support of this argument is *State v. Pigg*, 80 Kan. 481, 484-85, 103 Pac. 121 (1909).

In *Pigg*, the defendant/appellant offered to waive a preliminary examination when he was brought up on a warrant charging him with larceny. The State asked, however, that an out-of-state witness against the defendant be examined by the court in order to furnish a basis for requiring a recognizance for his appearance at trial. From this testimony, probable cause was found that the defendant was guilty of larceny from the person, a different offense from that with which he was charged. He was therefore bound over to the district court to answer that charge. He was later tried on the offense and convicted. He appealed, arguing that when he offered to waive preliminary examination, the magistrate was required to bind him over to answer the original charge without hearing evidence. We affirmed his conviction, holding the magistrate had the discretion to hear the evidence offered by the State. Although agreeing the most common reasons for the requirement of a preliminary examination are to inform the defendant of the nature of the crime with which he is

charged and to find if there is probable case for believing him guilty, we held the preliminary examination also may serve to determine bail and to perpetuate testimony which might otherwise be lost.

There is nothing in *Pigg* which indicates a district court does not have the discretion to decide a motion before preliminary examination. The State does not show how it was prejudiced by the court's decision to do so. There was no argument about the facts in this case, and the matter of law the court had to decide in determining the motion to dismiss was vigorously briefed orally and in writing by both parties. The evidence from the record shows only that, had a preliminary examination been held before the motion was decided, it would have wasted both the parties' and the court's time. K.S.A. 1987 Supp. 22-2902 states that a defendant charged with a felony has the right to a preliminary examination. The State has no such right.

The district court acquires jurisdiction of a criminal case upon the filing of the complaint, information, or indictment and thus has the discretion to rule on a motion therein prior to preliminary examination if notice and appearance requirements have been met.

The judgment of the trial court is affirmed.