OPINION OF THE COURT
Joseph J. Traficanti, Jr., J.
The defendant herein has been indicted by the Grand Jury of the County of Ulster in a six-count indictment. First and second counts of the indictment accuse the defendant, David Vercelletto, with vehicular manslaughter in the second degree *41 in violation of Penal Law § 125.12. Each of the first two counts accuses the defendant of criminal negligence causing the death of Samantha Banks by operating a motor vehicle while intoxicated. Samantha Banks at the time of the incident was an unborn child being carried by her mother, then seven months pregnant. The child was stillborn, the People claim, due to the automobile accident caused by the defendant.
The third and fourth counts of the indictment accuse the defendant of the crime of vehicular assault in the second degree, a violation of Penal Law § 120.03. The theory of these two counts is that the defendant caused a serious physical injury to Katherine Banks, the mother of the unborn child who was stillborn, subsequent to the accident.
The fifth and sixth counts of the indictment alleged a violation of Vehicle and Traffic Law § 1192 (2) and (3), operating a motor vehicle while under the influence of alcohol or drugs.
By notice of motion the defendant moves to dismiss the first four counts of the indictment on the grounds that as a matter of law the actions of the defendant alleged by the People do not constitute the crimes charged.
Ancillary relief sought is suppression of certain statements made by the defendant; suppression of certain physical evidence and a hearing pursuant to People v Sandoval (34 NY2d 371). As to each ancillary relief sought, a hearing is required and is hereby ordered. As to the motion to dismiss the first and second counts of the indictment alleging the crime of vehicular manslaughter in the second degree, the motion is granted and those parts of the indictment are dismissed. As to the third and fourth counts of the indictment alleging vehicular assault in the second degree, that branch of the defendant’s motion is denied.
I. VEHICULAR MANSLAUGHTER IN THE SECOND DEGREE (FIRST AND SECOND COUNTS)
The United States Supreme Court has held that a fetus after the first trimester is conclusively presumed to be viable and capable of meaningful life outside the mother’s womb. (Roe v Wade, 410 US 113.) The court concluded accordingly that individual States may regulate and criminalize conduct which causes the death of an unborn child during that period.
The fetus in this case, being seven months in gestation, was well beyond the first trimester. The question, however, is *42 whether or not New York State has criminalized the conduct alleged against this defendant relative to this seven-month stillborn fetus. The heart of the issue herein is not whether this seven-month fetus, Samantha Banks, was a person in any philosophical, religious or even medical sense; but whether she was a person in a legal sense under the meaning of Penal Law § 125.12, which provides the elements for the crime of vehicular manslaughter in the second degree.
In resolving this matter the court is constrained to apply and interpret the elements of a crime from the clear meaning set forth within the penal statute and, if an ambiguity is apparent, to ferret out the legislative intent by various rules of construction. When a court is concerned with a statute that is clearly penal in nature, it must be narrowly construed. To do otherwise will not withstand judicial scrutiny nor pass constitutional muster. From the earliest days of Statehood, New York has followed a long tradition of strictly construing penal statutes. A criminal offense should not be created by an uncertain or doubtful construction. The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the Legislature under the guise of "judicial construction”. Of course, common-law rules may be and often are used as an aid to construction or interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 73, 271-276, and cases cited therein.)
An examination of the New York statutes applicable herein compels a focus on Penal Law §§ 125.00, 125.05 (1); §§ 125.10 and 125.12. Penal Law § 125.00 is a general section which gives a generic definition of homicide. The scheme of the statute provides definitions of various types of homicide in later sections including murder, manslaughter, abortion and criminally negligent homicide. The applicable Penal Law provisions state the following:
"§ 125.00 Homicide defined.
"Homicide means conduct which causes the death of a person or an unborn child with which a female has been pregnant for more than twenty-four weeks under circumstances constituting murder, manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide, abortion in the first degree or self-abortion in the first degree.
"§ 125.05 Homicide, abortion and related offenses; definitions of terms.
*43 "The following definitions are applicable to this article:
"1. 'Person,’ when referring to the victim of a homicide, means a human being who has been born and is alive.” (Emphasis supplied.)
"§ 125.10 Criminally negligent homicide.
"A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person” (emphasis supplied).
"§ 125.12 Vehicular manslaughter in the second degree.
"A person is guilty of vehicular manslaughter in the second degree when he:
"(1) commits the crime of criminally negligent homicide as defined in section 125.10, and
"(2) causes the death of such other person by operation of a vehicle in violation of subdivision two, three or four of section eleven hundred ninety-two of the vehicle and traffic law” (emphasis supplied).
While at first blush it may appear by a reading of Penal Law § 125.00, homicide defined, that "person” was intended for the purposes of the entire article to include an unborn child more than 24 weeks in gestation, a further reading of all the statutes in the article (Penal Law §§ 125.05, 125.10, 125.12, 125.13, 125.15, 125.20, 125.25, 125.27, 125.40, 125.45, 125.50, 125.55) compels a different conclusion. As so ably pointed out by Judge Churde in People v Joseph (130 Misc 2d 377) a double definition of the victim of homicides was necessary since the homicide article included the offenses prohibiting medically unjustifiable abortion after 24 weeks of gestation. In every case other than illegal abortion the Legislature has ordained that the People are required to prove that the victim is a "person” within the meaning stated in Penal Law § 125.05 (1), i.e., "a human being who has been born and is alive” (emphasis supplied). Viewing the facts herein most favorable to the People, it is a burden that as a matter of law they cannot sustain in this case.
Confronted with similar statutes in criminal cases an overwhelming number of sister States have likewise taken the position that it is not within judicial province, under the guise of interpretation, to encompass within the various statutory definitions of "person” an unborn fetus unless specifically included by the Legislature. (Meadows v State, — Ark —, 722 SW2d 584; Keeler v Superior Ct., 2 Cal 3d 619, 470 P2d 617; *44 State v Gonzalez, 467 So 2d 723 [Fla App 1985]; People v Greer, 79 Ill 2d 103, 402 NE2d 203 [1980]; Hollis v Commonwealth, 652 SW2d 61 [Ky 1983]; State v Brown, 378 So 2d 916 [La 1979]; People v Guthrie, 97 Mich App 226, 293 NW2d 775 [1980]; see, State v Anonymous, 40 Conn Supp 498, 516 A2d 156, for further citations.)* Two States have reached a contrary result. Both Massachusetts and South Carolina are so-called common-law States. The courts in both States took the position that, based on medical technology, they could change the law; and they both based their decisions in part on developments in each State in civil law tort liability involving a fetal death. (Commonwealth v Cass, 392 Mass 799, 467 NE2d 1324 [1984]; State v Horne, 282 SC 444, 319 SE2d 703 [1984].) Even in the two minority jurisdictions, due process considerations dictated that the interpretations enlarging common-law standards could not be applied retroactively but could only be applied prospectively. While New York civil law recognizes that an infant injured in útero by the tort of another should when born alive be allowed to sue (Woods v Lancet, 303 NY 349), the death of an unborn child will not support an action for wrongful death. (Endresz v Friedberg, 24 NY2d 478.)
The majority of States confronted with this issue have done no more than to recognize the common-law rules as codified or modified by their own State’s statutes. At common law it was clear that an unborn fetus, viable or otherwise, could not be the subject of homicide. (3 Coke, Institutes, at 58 [1648]; 40 CJS, Homicide, § 2 [b], at 824; Annotation, Homicide Based on Killing of Unborn Child, 40 ALR3d 444.) It appears that the New York State Legislature in the 1965 revisions of the Penal Law adopted the common-law rule by defining "person” as "a human being who has been born and is alive”. (Penal Law § 125.05 [1].) Despite the following 22 years of development in science and medical technology there has been no revision of the definition.
The People attack as archaic the current requirement that a fetus must be born alive to be a victim of the crime charged *45 here in light of scientific and medical knowledge that life exists before birth. (See also, State v Soto, 378 NW2d 625 [Minn 1985] [see, dissent by Yetka, J.].) Many courts have rejected this argument based on the belief that such a complex and controversial subject should be addressed by the Legislature and not by judicial fiat. (See, Keeler v Superior Ct., supra; People v Greer, supra; State v Dickinson, 28 Ohio St 2d 65, 275 NE2d 599 [1971]; Meadows v State, supra.) What the law ought to be is not within this court’s province but the province of the Legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes § 73.)
Indeed, a number of States have enacted feticide statutes. In Florida a statute was enacted specifically defining as a crime the willful killing of an unborn child by an injury to the mother. (Fla Stat § 782.09 [1983].) This statute of course deals with the "willful” killing; it is nevertheless an example of legislative action addressing the question of feticide in view of modern advances in scientific and medical knowledge. The California Legislature has likewise amended its murder statute to include the unlawful killing of a human being or a fetus. The Legislature of the State of New York could amend its murder and manslaughter statutes, if it chooses to do so, to include specifically the death of a fetus by willful conduct or culpable negligence. To date it has not seen fit to do so.
In view of the understandable confusion generated by the present statute particularly in light of recent scientific developments, the Legislature is urged to consider the issue and determine whether as a body politic, it deems the present statute adequate to protect the unborn; or whether prospective changes in criminal liability relating to feticide are required. The Legislature is uniquely qualified to address this issue, being composed of members geographically proportional throughout the State and being able to conduct hearings in a nonadversary setting. It can consider all the aspects of the issue and not only the specific facts set forth in a particular litigation. Accordingly, the court is requesting the Legislature to review this serious problem and will forward copies of this decision to the Law Revision Commission and the chairmen of the Judicial Committees of the Senate and Assembly.
Pursuant to the foregoing, the first and second counts of indictment No. 105-86 are dismissed. In so doing, this court does not hold that a viable fetus is not alive nor does it hold that a person should not be punished for causing its death. This decision rests on what the court perceives to be the law *46 in this matter. As stated by Judge Wilkins in a Utah case of similar proportions, a court is not insulated from feelings which acknowledge the anguish of the parents and the overwhelming tragedy. (State v Larsen, 578 P2d 1280 [Utah 1978].) However, a court is bound to apply the law as written by the Legislature.
II. VEHICULAR ASSAULT IN THE SECOND DEGREE (THIRD AND FOURTH COUNTS)
The defendant maintains that the third and fourth counts of the indictment are not sustainable as a matter of law; that is, that the loss of a fetus is not a serous physical injury within the Penal Law of the State of New York. The defendant urges that any ambiguity must be resolved in the defendant’s favor. Relative to this statute however, this court sees no ambiguity.
A clear reading of the third and fourth counts of this indictment reveals that the People claim a vehicular assault committed with criminal negligence against the person of Katherine Banks, the mother of the stillborn fetus, and not the fetus itself.
The alleged victim, the mother, is clearly a living person who has been born. Viewing the facts most favorable to the People, as the court must on such an application, the defendant’s motion must be denied. The applicable Penal Law provisions follow:
"§ 120.03 Vehicular assault in the second degree.
"A person is guilty of vehicular assault in the second degree when:
"(1) with criminal negligence he causes serious physical injury to another person, and
"(2) causes such serious physical injury by operation of a vehicle in violation of subdivision two, three or four of section eleven hundred ninety-two of the vehicle and traffic law.”
"§ 10.00 Definitions of terms of general use in this chapter * * *
"9. 'Physical injury’ means impairment of physical condition or substantial pain.
"10. 'Serious physical injury’ means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.”
*47 It cannot be said that the loss of an unborn child through criminal negligence is not a serious physical injury as a matter of law. The destruction of the fetus and the accompanying rupture of the placenta, in this court’s view, could constitute a serious physical injury. The placenta is a part of the mother’s body which exercises a specific function and may be found by a jury to be an "organ”. (See, Borland’s Medical Dictionary [23d ed]; Schmidt’s Attorney’s Dictionary of Medicine.)
Having a seven-month fetus untimely expelled from its mother’s womb may be a serious injury to the mother under the meaning of the Penal Law. It is a result which can fairly be included in the legislative scheme given the definition of serious physical injury quoted above and thus raises a question of fact to be determined by a jury. (People v Rojas, 61 NY2d 726; Matter of Philip A., 49 NY2d 198, 200; People v Williams, 96 AD2d 740; People v Hall, 89 AD2d 788; People v Ahearn, 88 AD2d 691.)
In the civil law, while not recognizing a cause of action on behalf of an unborn child for wrongful death, New York does permit a mother to sue for any injury which she sustained in her own person, including her physical and emotional suffering as a result of stillbirth. (Endresz v Friedberg, supra.)
Considering the foregoing, the court concludes that the loss of a fetus under the circumstances of this case falls well within the four corners of the definition of serious physical injury as previously defined. The branch of defendant’s motion, therefore, addressed to the third and fourth counts of the indictment is denied.
As requested, the court has made an in camera inspection of the Grand Jury minutes and finds them legally sufficient to support the third, fourth, fifth and sixth counts of this indictment.

 State v Soto (378 NW2d 625, 628-629 [Minn 1985]) states: "We have been informed by brief and in oral argument, that of 25 jurisdictions in the United States which have considered the issue, both in so-called 'common law’ and in so-called 'code’ states, 23 have adopted the 'born alive’ rule. From the foregoing it is clear that the common law 'born alive’ rule is now well-established in the great majority of jurisdictions. In many jurisdictions the rule existed long before enactment of the vehicular homicide statutes by our own legislature.”