## State of Vermont v. Lawrence R. Oliver

[563 A.2d 1002]

No. 87-512

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed June 16, 1989

*John T. Quinn, Addison County State's Attorney,* Middlebury, for Plaintiff-Appellant.

*Lawrence R. Oliver, pro se,* East Middlebury, Defendant-Appellee.

*Walter M. Morris, Jr., Defender General,* and *Henry Hinton, Appellate Defender,* Montpelier, amicus curiae.

**Allen, C.J.** Defendant was charged with careless and negligent operation of a motor vehicle resulting in the death of a person, 23 V.S.A. § 1091(c). According to supporting affidavits, the accident caused the death of an *in utero* fetus at a gestational age of 34-35 weeks. The trial court refused to find probable cause for the charge, ruling that an unborn viable fetus is not a person within the meaning of § 1091. The State brings this interlocutory appeal, and the controlling question of law is "whether an unborn viable fetus is a person as contemplated by 23 V.S.A. § 1091(c)." We answer the question in the negative.

Section 1091(c) imposes criminal penalties on any "person who, while engaged in the violation of any law, ordinance or regulation applying to the operation or use of a motor vehicle or to the regulation of traffic, causes, as a result of the violation, the death of any person . . . ."[1] Though 23 V.S.A. § 4(27) provides a definition

---

[1] Section 1091(c) reads in full:

> A person who, while engaged in the violation of any law, ordinance or regulation applying to the operation or use of a motor vehicle or to the

of the word "person," it does not aid in the resolution of the issue at hand.[2] Thus, when interpreting the meaning of the statute, this Court is compelled to give effect to the apparent intent of the legislature, *State* v. *Baldwin,* 140 Vt. 501, 509, 438 A.2d 1135, 1140 (1981), and must be guided by the fundamental principle that "the common law in force at the time the statute was passed is to be taken into account in construing undefined words of the statute." *Meadows* v. *State,* 291 Ark. 105, 107, 722 S.W.2d 584, 585 (1987); see also *State* v. *Messier,* 145 Vt. 622, 627, 497 A.2d 740, 742 (1985) ("Where the legislative intent to effectuate a change in the common law is clearly and plainly expressed, it will be recognized.").

The statutory predecessor to § 1091(c) first appeared as a Vermont law in 1925 as a result of a complete overhaul of the state's motor vehicle laws. 1925, No 70, § 86.[3] In determining the legislature's intent in enacting the predecessor statute, this Court must look to the common law regarding homicide as it existed in 1925.

As far back as the 17th century, it was the prevailing view under the common law that only living human beings could be the victims of homicide.[4] The killing of a fetus did not constitute

---

regulation of traffic, causes, as a result of the violation, the death of any person shall be fined not more than $3,000.00, or imprisoned not less than one year nor more than 15 years, or both. The provisions of this section do not limit or restrict prosecutions for manslaughter.

[2] According to 23 V.S.A. § 4(27), " '[p]erson' as used in this title, shall include a corporation, association, co-partnership, company, firm or other aggregation of individuals."

[3] Section 86 stated, in relevant part:
    Careless or negligent operators; speed; penalty.
    . . . .
    . . . If the death of any person results from the careless or negligent operation of a motor vehicle, the person convicted of such careless and negligent operation, shall, in lieu of any other penalty imposed in this section, be imprisoned not more than five years, or fined not more than two thousand dollars, or both, provided, however, that the provisions of this section shall not be construed to limit or restrict prosecutions for manslaughter.
The above language was added to 1906, No. 113, § 2, prescribing the penalties for running a motor vehicle on a public or private way in a careless or negligent manner in violation of 1906, No. 113, § 1. This language, later codified at 23 V.S.A. § 1181, remained substantially unchanged until its repeal by 1971, No. 258 (Adj. Sess.), § 20, eff. March 1, 1973 and replacement with the current version of 23 V.S.A. § 1091(c).

[4] Credited with one of the first statements of the "born alive" rule was Sir Edward Coke, who maintained: " ' If a woman be quick with childe, and by a po-

criminal homicide unless it was born alive and later died of injuries inflicted prior to birth. The "born alive" rule has since become and continues to remain the prevailing common law view throughout the United States. See discussions in *Commonwealth* v. *Cass,* 392 Mass. 799, 805, 467 N.E.2d 1324, 1328 (1984); *Keeler* v. *Superior Court,* 2 Cal. 3d 619, 625, 470 P.2d 617, 619, 87 Cal. Rptr. 481, 483 (1970); 2 W. LaFave & A. Scott, Substantive Criminal Law § 7.1(c), at 185 n.13 (1986). Although this Court has never had occasion to address the issue, the "born alive" rule was widely accepted throughout the country by the time of the enactment of the statutory predecessor to § 1091(c), and must be taken into account by the Court when assigning meaning to terms contained in the statute. In light of this rule, we interpret the legislature's intent in using the word "person" in § 1091(c) as limiting the application of the statute to circumstances involving the death of individuals who have already been born.[5] The death of a viable fetus falls outside of the purview of the statute.[6]

tion or otherwise killeth it in her wombe, or if a man beat her, whereby the childe dyeth in her body, and she is delivered of a dead childe, this is a great misprision [i.e., misdemeanor], and no murder; but if the childe be born alive and dyeth of the potion, battery, or other cause, this is murder . . . .' " *Keeler* v. *Superior Court,* 2 Cal. 3d 619, 625-26, 470 P.2d 617, 620, 87 Cal. Rptr. 481, 484 (1970) (quoting 3 Coke, Institutes *58 (1648)).

[5] Moreover, given the wide acceptance of the "born alive" rule, the legislature would have defined "person" to include a viable fetus had it intended to change the rule.

[6] Our decision finds support in the vast majority of jurisdictions which have already considered the issue. *Meadows* v. *State,* 291 Ark. 105, 722 S.W.2d 584 (1987); *Keeler* v. *Superior Court,* 2 Cal. 3d 619, 470 P.2d 617, 87 Cal. Rptr. 481; *State* v. *McCall,* 458 So. 2d 875 (Fla. Dist. Ct. App. 1984); *Billingsley* v. *State,* 183 Ga. App. 850, 360 S.E.2d 451 (1987); *People* v. *Greer,* 79 Ill. 2d 103, 402 N.E.2d 203 (1980); *State* v. *Trudell,* 243 Kan. 29, 755 P.2d 511 (1988); *Hollis* v. *Commonwealth,* 652 S.W.2d 61 (Ky. 1983); *State* v. *Brown,* 378 So. 2d 916 (La. 1979); *People* v. *Guthrie,* 97 Mich. App. 226, 293 N.W.2d 775 (1980); *State* v. *Soto,* 378 N.W.2d 625 (Minn. 1985); *In re A.W.S.,* 182 N.J. Super. 278, 440 A.2d 1144 (1981); *State* v. *Willis,* 98 N.M. 771, 652 P.2d 1222 (1982); *People* v. *Vercelletto,* 135 Misc. 2d 40, 514 N.Y.S.2d 177 (Ulster County Ct. 1987); *State* v. *Dickinson,* 28 Ohio St. 2d 65, 275 N.E.2d 599 (1971); *State* v. *Amaro,* 448 A.2d 1257 (R.I. 1982); *State* v. *Evans,* 745 S.W.2d 880 (Tenn. Crim. App. 1987); *State* v. *Larsen,* 578 P.2d 1280 (Utah 1978). This Court is aware of only two jurisdictions which have reached a different result. *State* v. *Horne,* 282 S.C. 444, 319 S.E.2d 703 (1984) (unborn child is person within statutory definition of murder, S.C. Code Ann. § 16-3-10 (1976)); *Commonwealth* v. *Cass,* 392 Mass. 799, 467 N.E.2d 1324 (1984) (viable fetus is person for purposes of vehicular homicide statute, G.L. c. 90 § 24G).

The State argues that our recent decision in *Vaillancourt* v. *Medical Center Hospital of Vermont, Inc.*, 139 Vt. 138, 143, 425 A.2d 92, 95 (1980), holding that there may be liability under Vermont's wrongful death statute for negligently causing the death of an unborn, viable fetus, requires this Court to likewise find that death of an unborn, viable fetus may form the basis of a criminal prosecution under § 1091(c). According to the State, "it . . . would make no sense to determine a child's personhood, for purposes of being the victim of a crime, by reference to which side of the birth canal the child is on at the time of its victimization."

There exists, however, an important distinction between § 1091(c) and Vermont's wrongful death statute, 14 V.S.A. §§ 1491, 1492. The wrongful death statute is remedial in nature, being designed to allay the harsh common law rule denying liability due to the death of the victim, and must therefore be construed liberally. *Vaillancourt,* 139 Vt. at 141, 425 A.2d at 94. Penal statutes, on the other hand, are to be strictly construed in a manner favorable to the accused. *In re Hough*, 143 Vt. 15, 19, 458 A.2d 1134, 1136 (1983); *State* v. *Sidway,* 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981). "The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature under the guise of 'judicial construction.' " *People* v. *Vercelletto,* 135 Misc. 2d 40, 41, 514 N.Y.S.2d 177, 178 (Ulster County Ct. 1987). Application of the rule of strict construction under these circumstances supports the conclusion that an unborn fetus is not a person within the meaning of § 1091(c).[7]

The State makes several additional arguments based on the Supreme Judicial Court of Massachusetts' decision in *Commonwealth* v. *Cass*, 392 Mass. 799, 467 N.E.2d 1324. The Court in *Cass* determined that a viable fetus is a "person" for purposes of

---

[7] Of those jurisdictions which have interpreted wrongful death statutes to allow recovery for the death of a viable fetus and have also faced the issue at hand, the majority have declined to interpret analogous criminal statutes as imposing criminal sanctions for the death of a viable fetus. *Billingsley* v. *State,* 183 Ga. App. at 851, 360 S.E. at 452; *People* v. *Greer,* 79 Ill. 2d at 113-14, 402 N.E.2d at 208; *State* v. *Trudell,* 243 Kan. at 32, 755 P.2d at 514; *Hollis* v. *Commonwealth,* 652 S.W.2d at 62; *People* v. *Guthrie,* 97 Mich. App. at 230-31, 293 N.W.2d at 777; *State* v. *Soto,* 378 N.W.2d at 630; *State* v. *Dickinson,* 28 Ohio St. 2d at 70, 275 N.E.2d at 602; *State* v. *Amaro,* 448 A.2d at 1259. But see *Commonwealth* v. *Cass,* 392 Mass. at 800, 467 N.E.2d at 1326; *State* v. *Horne,* 282 S.C. at 446-47, 319 S.E.2d at 704.

Massachusetts' vehicular homicide statute, G.L. c. 90, § 24G. In coming to its decision, the court distinguished Massachusetts from those jurisdictions comprising the majority view by its assertion that it may develop "common law rules of criminal law" since its body of "criminal law is largely common law." *Id.* at 803, 467 N.E.2d at 1327. According to the court, the "notion that [it is] unable to develop common law rules of criminal law because the Legislature has occupied the entire field of criminal law" applies only to code jurisdictions. *Id.*[8]

The State argues that since Vermont is a "common law" state, this Court has the authority to interpret the term "person" in § 1091(c) to mean something other than its common law definition. We disagree with the distinction drawn by the Massachusetts court and thus with the State's argument. The fact that Vermont is a "common law" jurisdiction with regards to the criminal law does not free us from the fundamental principle of separation of powers underlying the structure of our state government. Here, the legislature has expressly enacted a criminal penalty provision, § 1091(c), and we are bound to interpret its language within the context of the adversary proceeding before us in a manner not inconsistent with existing common law. *Meadows,* 291 Ark. at 107, 722 S.W.2d at 585.

We agree with the State that application of the "born alive" rule may lead to irrational or unjust results. It is not difficult to imagine how an individual might be punished for the death of an infant caused by injuries received prenatally, while another escapes prosecution because the victim is stillborn. This Court, however, is not the proper forum in which to consider and accomplish the extension of criminal liability that would occur as a result of interpreting the term "person" in § 1091(c) to include a viable fetus. That task must be accomplished by the legislature.

---

[8] The Supreme Court of Minnesota, in *State* v. *Soto,* clarified the difference between "code" and "common law" states:

> In the United States some jurisdictions recognize common law crimes as well as those crimes defined and proscribed by legislative enactment. Such states are known as "common law" states. Other states of the union have abolished common law crimes either by statute or constitution, and have provided that no act or omission constitutes a crime unless defined by statute. Such jurisdictions are known as "code states."

378 N.W.2d at 627.

*The controlling question of law is answered in the negative.*