2012 VT 7

## State of Vermont v. Jennifer A. Wyrocki

[38 A.3d 63]

No. 10-326

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed January 26, 2012

*William H. Sorrell*, Attorney General, and *Evan Meenan*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, *Rebecca Turner*, Appellate Defender, and *Alex Foote*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant appeals her conviction for disturbing the peace by telephone in violation of 13 V.S.A. § 1027(a)(iii). The State charged defendant with making repeated and anonymous terrifying, intimidating, threatening, harassing, or annoying telephone calls. Defendant first argues that the trial court incorrectly found that the calls were "anonymous" as required by § 1027. She also argues that, as applied to this case, § 1027 violates the First Amendment to the United States Constitution because it criminalizes protected speech. Lastly, she argues that § 1027 is unconstitutionally overbroad and vague. We agree that defendant's calls were not anonymous within the meaning of the statute and therefore reverse.

¶ 2. On August 22, 2009, Roxanne Emilo received two telephone calls in succession on her cell phone while at work. The first came at about 3:20 in the afternoon. Though Ms. Emilo's cell phone has caller identification (caller ID), she could not view the caller's phone number because it registered on her caller ID as "withheld." Upon answering the call, however, Ms. Emilo at once identified the caller as defendant because she recognized her voice. Ms. Emilo knew defendant's voice because defendant was her son's girlfriend and they had spoken many times before. Ms. Emilo's son had been living with defendant for more than six years, during which time defendant and Ms. Emilo had visited each other's houses and talked over the phone. At trial, Ms. Emilo testified that she was "absolutely" sure that defendant was the caller.

¶ 3. After Ms. Emilo answered, defendant unleashed a series of profanity-laced insults at her. Screaming, she said to Ms. Emilo, "I hope you're happy," "You fucking bitch," "He's going to die in jail," and "I hope you die." Upset, Ms. Emilo ended the call. Two

minutes later, Ms. Emilo received a second call, during which she again immediately recognized defendant as the caller. This time defendant said, "I hope you run your car into a tree and fucking die."

¶ 4. Unknown to Ms. Emilo, her son had been removed from defendant's apartment earlier that day and taken to jail. This apparently resulted from Ms. Emilo's report to the Vermont Housing Authority that her son was living with defendant in violation of defendant's housing agreement. Although Ms. Emilo was unaware of her son's arrest, she had long disapproved of his relationship with defendant, with whom he shared substance abuse problems.

¶ 5. Based on the foregoing evidence, defendant was convicted after a bench trial. The statute at issue, 13 V.S.A. § 1027(a), penalizes, in pertinent part:

> [a] person who, with intent to terrify, intimidate, threaten, harass or annoy, makes contact by means of a telephonic or other electronic communication with another and . . . disturbs, or attempts to disturb, by repeated *anonymous* telephone calls . . . , whether or not conversation ensues, the peace, quiet or right of privacy of any person at the place where the communication . . . [is] received.

(emphasis added). Before the verdict, defendant moved for a judgment of acquittal on three grounds: that her conduct was protected by the First Amendment, and that the two phone calls within two minutes were neither "repeated" nor "anonymous" under § 1027. The trial court denied defendant's motion, reasoning that § 1027 does not run afoul of the First Amendment because it punishes conduct, "not the actual words spoken by the accused." It also ruled that making two phone calls meets the section's definition of "repeated." Finally, the court concluded that defendant's calls were anonymous as required by § 1027. Using Black's Law Dictionary, it defined "anonymous" as "not named or identified," and reasoned that defendant's calls satisfied this definition because she did not identify herself and "called from a phone that prevented Ms. Emilo from seeing her phone number." Defendant appealed her conviction.

¶ 6. On appeal, defendant renews two of the three arguments made in her motion for judgment of acquittal and adds two

others. She first argues that the trial court erred in finding that her calls were "anonymous" because Ms. Emilo knew that defendant was the person calling her. Defendant next argues that § 1027 violates the First Amendment as applied to this case because, though "distasteful or vulgar," her calls did not contain obscene language, fighting words, or threats, and were therefore protected speech. She also argues that the statute is unconstitutionally overbroad because it necessarily punishes, and will thus discourage individuals from engaging in, protected speech. Finally, defendant claims that the statute is unconstitutionally vague. Because this appeal turns on defendant's first argument, we need not decide her other claims.

¶ 7. The meaning of "anonymous" under § 1027 is one of first impression, and we review the trial court's interpretation de novo. See *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305 (stating that statutory interpretation is question of law warranting de novo review). Enacted in 1967, § 1027 became law well before caller ID became commonplace in American telephones and has not been amended substantively since. 1967, No. 171, § 1; see also 1999, No. 124 (Adj. Sess.), § 2 (making slight changes to § 1027); James Barron, *Thing; Caller ID*, N.Y. Times, May 3, 1992, § 9, at 11 (noting that New Jersey was first state to approve caller ID in 1987). Vermont's prohibition on anonymous disturbing calls was in place for years before there was any conventional way for a caller's identity to be known short of the now somewhat quaint necessity of having to blindly pick up the receiver to answer a telephone. The absence, or even masking of caller ID, therefore, is of no moment to our reading of § 1027.

¶ 8. Consider the dueling definitions of "anonymous" offered on appeal. The State, echoing the trial court, argues that a call is "anonymous" under § 1027 when "a defendant [takes] steps to conceal his or her identity," a definition also drawn from Black's Law Dictionary. Black's Law Dictionary 100 (8th ed. 2004). To the State, this means that defendant's calls were anonymous "because she failed to identify herself and she called from a phone that prevented her victim from seeing who was calling." Defendant contends that no call is anonymous if the person receiving the call identifies the caller. She does not dispute the use of Black's Law Dictionary to define "anonymous," but disagrees with viewing anonymity from the caller's perspective only. Defendant maintains

the calls were not anonymous because Ms. Emilo immediately recognized her as the caller. We agree with defendant's application of the definition.

¶ 9. This construction is consistent with the common understanding of what "anonymous" means. Again, Black's Law Dictionary defines "anonymous" as "[n]ot named or identified." Black's Law Dictionary 100 (8th ed. 2004). Webster's defines it as "having or giving no name" or "of unknown or unnamed origin." Webster's New Collegiate Dictionary 46 (1981). Another dictionary defines anonymous as "[h]aving an unknown or unacknowledged name" or "having an unknown or withheld authorship or agency." The American Heritage Dictionary of the English Language 54 (New College 1979).

¶ 10. The State, in part, posits that the trial court properly relied upon Black's Law Dictionary to define "anonymous," as opposed to another dictionary definition. As shown by these three exemplary definitions, however, there is little, if any, significant variation as to the commonly accepted meaning of the term. The real issue is not between definitions, but whether the trial court's focus on anonymity from the caller's viewpoint, and not the listener's, comports with the meaning of the Legislature. Under all of these definitions, a telephone caller's anonymity depends in part on the listener's nonrecognition of the person engaging in the call, since at the instant of recognition the caller's name or identity, or both, are known. Under any definition, a call cannot be anonymous when its author is known to the listener. It is therefore a necessary condition of § 1027 anonymity that the person taking the call does not know the sender.[1]

¶ 11. Because the trial court's findings and Ms. Emilo's testimony leave no doubt that she knew defendant was the caller, we hold that defendant's calls were not anonymous within the meaning of § 1027.[2] If the conduct charged against defendant had

---

[1] This construction leaves open whether calling repeatedly and hanging up before the listener can identify a caller could support a conviction under the act.

[2] As noted in the State's brief, other courts have applied the definition of "anonymous" as urged by the State. See *McKillop v. State*, 857 P.2d 358, 362 (Alaska Ct. App. 1993) (defining "anonymous" in terms of whether defendant withheld his name). On the other hand, defendant also offers cases in support of her proposed definition. Concurring in *Florida v. J.L.*, 529 U.S. 266 (2000), for example, Justice Kennedy — speaking about the use of anonymous tips to support

occurred after enactment of § 1027, but during the twenty years before the dawn of caller ID, it is beyond cavil that it would be no offense under § 1027(a). The invention of caller ID did not turn what was no violation of the statute in 1967 into a crime today.

■ ¶ 12. Reaching this result, we also reject the State's argument that defining "anonymous" as "anonymous in fact" leads to an absurd result. The State contends that § 1027 could hardly be enforced if its violation depended upon victims not recognizing a caller's voice. First, if correct, the State's argument is still no reason to apply the statute contrary to its plain meaning at the time of passage. Second, it is not inherently absurd to read a criminal statute in a way that limits the range of possible offenders. See *State v. Oliver*, 151 Vt. 626, 629, 563 A.2d 1002, 1004 (1989) ("Penal statutes . . . are to be strictly construed in a manner favorable to the accused."). Moreover, as defendant impliedly argues in her brief, it is not patently unreasonable that the Legislature would criminalize terroristic, intimidating, threatening, harassing, or annoying telephone calls from unknown, rather than known actors, since such messages can reasonably be viewed as more vexing, disturbing, or sinister when communicated anonymously. In contrast, defendant's identity was not unknown, her telephonic communication was not anonymous, and § 1027 does not criminalize the conduct alleged in this case.

*Reversed.*

---

a Fourth Amendment stop — explained that a call following multiple previous calls by "an unnamed caller with a voice that sounds the same each time . . . ought not be treated automatically" like an anonymous tip. *Id.* at 275 (Kennedy, J., concurring). Again, regardless of arguable differences in definitions, we read the statute to apply to communications anonymous in fact to the listener.