NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 102

No. 2020-122

In re Robert Grundstein

Original Jurisdiction

Board of Bar Examiners

September Term, 2020


Keith J. Kasper, Chair

Robert Grundstein, Pro Se, Morrisville, Petitioner-Appellant.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Andrew R. Strauss,
  Licensing Counsel/Special Assistant Attorney General, Burlington for Respondent-Appellee.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.    **EATON, J.**    Robert Grundstein appeals from the Board of Bar Examiners' determination that he failed to establish his eligibility for admission to the Vermont bar in connection with his 2019 application for admission by examination. He argues that, for numerous reasons, the Board erred in evaluating his application pursuant to the Rules of Admission to the Bar of the Vermont Supreme Court in effect at the time his application was submitted. We conclude that the Board correctly applied the Rules and affirm.

¶ 2.    The relevant factual and procedural history is as follows. Applicant graduated from law school in 1985. In February 2016, he achieved a passing score on the Vermont bar examination on his third attempt. However, applicant was not admitted to the bar at that time because the Character and Fitness Committee concluded that he failed to meet his burden of demonstrating a good moral character, a determination we upheld on appeal. In re Grundstein,

2018 VT 10, ¶¶ 1, 47, 206 Vt. 575, 183 A.3d 574.  As a result, the rules precluded applicant from reapplying for admission during the two following years.  See id. ¶ 48; V.R.A.B. 19 (providing that applicant "denied a certification of Good Moral Character and Fitness is not eligible to apply for admission to the Bar for a period of 2 years after the denial").  In response to an inquiry from applicant, Licensing Counsel took the position that this time period began to run on the date we affirmed the Committee's recommendation in Grundstein.

¶ 3.     The February 2016 examination applicant sat for was the last administration prior to this Court's adoption of the Uniform Bar Examination (UBE), which was given in Vermont for the first time in July 2016.  Subsequent to the adoption of the UBE, the rules provided that a bar applicant could demonstrate Minimum Professional Competence in one of three ways: by attaining a score of 270 or higher on the UBE administered in Vermont provided the exam was taken within five years of law school graduation, see V.R.A.B. 9(b)(1), (3); by transferring a score of 270 or higher on the UBE administered in another jurisdiction, see V.R.A.B. 13(b); or upon a showing that the applicant is licensed in another jurisdiction, has been actively engaged in the practice of law for at least five of the preceding ten years, and has not received a score of less than 270 on the UBE in any jurisdiction within the last five years, see V.R.A.B. 14, 15.  In July of 2018, applicant took the UBE in Washington, D.C., and received a score of 266.  He was not admitted to the bar of that jurisdiction.

¶ 4.     Applicant submitted the instant application for admission to the Vermont bar by examination in September 2019, offering his 2016 non-UBE score to satisfy the burden of showing Minimum Professional Competence.  The Board concluded that applicant failed to establish his eligibility for admission under any of the three avenues of admission provided by the Vermont Rules of Admission to the Bar.  The Board explained that applicant was not eligible for admission by examination because his 2016 Vermont score is not a UBE score.  And applicant had received that score more than five years after his 1985 law-school graduation, a further disqualification.

2

Applicant was not eligible for admission by transferred UBE score because his 2018 score from Washington, D.C., was below 270. Finally, the Board noted, applicant was ineligible for admission without examination because he was neither admitted in at least one United States jurisdiction, nor had he been actively engaged in the practice of law for at least five of the preceding ten years. Moreover, his score of less than 270 on the UBE within the past five years foreclosed this option. Applicant brought the instant appeal.

¶ 5. Because the issues in this appeal go to the enforceability of the Rules and this Court's ability to hear issues not preserved before the Board, a brief description of the legal landscape is a necessary precursor to our analysis. The Vermont Constitution vests this Court with broad regulatory authority concerning the admission of attorneys to the state bar. Vt. Const. ch. II, § 30; see also In re Connor, 2006 VT 131, ¶ 6, 181 Vt. 555, 917 A.2d 442 (mem.). In an exercise of that authority, we established the Rules of Admission to the Bar of the Vermont Supreme Court, the Board of Bar Examiners, and the Character and Fitness Committee. In re Oden, 2018 VT 118, ¶¶ 3-4, 208 Vt. 642, 202 A.3d 252; see also V.R.A.B. 1. The Board is tasked with determining, in the first instance, whether each applicant to the Bar has discharged the burden of establishing Minimum Professional Competence via one of the three paths to admission set forth in the Rules. Oden, 2018 VT 118, ¶ 4; V.R.A.B. 1.

¶ 6. This constitutional framework informs our standard of review. Although on appeal we give careful consideration to the Board's findings and conclusions, we are not bound by them. In re Birt, 2020 VT 55, ¶ 6, __ Vt. __, 237 A.3d 1263 (explaining although we afford Board "broad discretion" in enforcing Rules, generally setting aside decisions only upon "strong showing of abuse of . . . discretion, fraud, corruption, arbitrary action, or oppression," our review is "nondeferential"). Rather, "[w]e have plenary authority to review the Board's decisions because the Vermont Constitution gives this Court the unique responsibility to regulate the practice of law within this state." Oden, 2018 VT 118, ¶ 7 (quotation and alterations omitted).

3

¶ 7.     Before addressing applicant's argument, we must also take up Licensing Counsel's suggestion that bar applicants representing themselves on appeal from a Board decision should "be held to the standard of a competent licensed attorney."  We decline to hold bar applicants to the standard of a profession to which they have yet to be admitted.  Like other pro se parties, then, such litigants will receive some leeway in the evaluation of their arguments, although they are nonetheless bound to observe the rules of procedure.  Zorn v. Smith, 2011 VT 10, ¶ 22, 189 Vt. 219, 19 A.3d 112.

¶ 8.     With these considerations in mind, we turn to the issues at hand.  We recently explained in Birt that, absent an express provision to the contrary, an application for bar admission is considered under the rules in place at the time the application was submitted.[1]  Birt, 2020 VT 55, ¶ 10.  Applicant does not seriously contest that, when he submitted the application at issue in 2019, admission by examination was only available to those who obtained a score of 270 on the UBE, and not pursuant to a passing score on any other examination.  V.R.A.B. 9(b)(3); Oden, 2018 VT 118, ¶ 9 (holding that where rules "use the term 'UBE,' " they do so to the exclusion of "bar examinations generally").  Instead, applicant argues that the 2019 rules are not properly applied to his application for the following reasons: (1) because applicant did not find evidence that the Rules and their amendments were submitted to the Legislative Rules Committee, the Rules are unenforceable; (2) the instant application is not a new application but a continuation of his 2015 application subject to the 2015 rules; (3) applicant's character and fitness should have been evaluated prior to his professional competency; (4) his 2016 examination suffices to demonstrate his competence; (5) the principals of laches, lenity, and estoppel require that the 2015 rules apply

---

[1]  Following oral argument in this matter, applicant sought to file a brief distinguishing Birt.  Applicant's request that we consider supplemental argument in an additional brief filed after oral argument is hereby denied.  Vermont Rule of Appellate Procedure 28(j) allows parties to file a "limited" statement citing to "pertinent and significant authorities" which come to their attention after oral argument.  Pursuant to this rule, the party may file only a "letter" stating "without argument the reasons for the supplemental citations."  V.R.A.P. 28(j) (emphasis added).  The Rules do not allow for supplemental briefing after argument.

to his application; (6) he has a vested property right in his 2016 bar score and the change to the rule constitutes a "taking" prohibited by the Fifth Amendment to the United States Constitution; (7) Rule 9(b)(1) violates the Equal Protection clause because it impinges upon a fundamental right, and; (8) Rule 9(b)(1) violates the Privileges and Immunities Clause.  We address each argument in turn.

¶ 9.     We first reject the contention that the Rules are without force because applicant found no record that they were either sent to the Legislative Committee on Judicial Rules or reviewed by that Committee.  The basis of his argument is 12 V.S.A. § 3(e), which provides that "[r]ules or amendments thereto promulgated by the Supreme Court . . . shall be submitted to the Legislative Committee on Judicial Rules at least 60 days prior to their effective date."  We interpret unambiguous statutory provisions like this one with reference to the plain meaning of the words the Legislature chose.  Doyle v. City of Burlington Police Dep't, 2019 VT 66, ¶ 5, __ Vt. __, 219 A.3d 326.  Section 3(e) imposes no requirement that the Court create a public record of such submission, let alone invalidity of the rules as a consequence for the failure to do so.[2]  Had it wished, the Legislature could have utilized the same language it used in § 3(c), requiring the Committee on Judicial Rules "give public notice" of any public hearing on a Court rule.  Daniels v. Vt. Ctr. for Crime Victims Servs., 173 Vt. 521, 523, 790 A.2d 376, 379 (2001) (mem.) ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority.").  We decline to read such a requirement into the unambiguous language used by the Legislature.

---

[2]  Indeed, it is difficult to imagine that such a result would square with the Vermont Constitution's grant of plenary power to this Court in connection with the admission of attorneys to the state bar.  Vt. Const. ch. II, § 30 ("The Supreme Court shall have administrative control of all the courts of the state, and disciplinary authority concerning all judicial officers and attorneys at law in the State."); see also 4 V.S.A. § 901 ("Justices of the Supreme Court shall make, adopt, and publish and may alter or amend rules regulating the admission of attorneys to the practice of law before the courts of this State.").

¶ 10. Nor is the application at issue in this appeal a continuation of applicant's 2015 application and therefore subject to the rules as they read at that time. In support of his argument to this effect, applicant points to current Rule 9(c)(6), which provides that "[a]n Application is considered a continuing application, meaning the Applicant has a duty to supplement all information provided to the Board up to and including the date of admission." However, Rule 9(c) goes on to require that an applicant must "refile" an application if he "is denied admission." V.R.A.B. 9(c)(7)(D). Applicant's 2015 application therefore ceased to be "continuing" when he was denied admission to the bar.

¶ 11. Applicant also alleges that, in 2014, an agent of the Board made a statement which bound the Board to consider applicant's character and fitness before he was permitted to sit for the bar exam. Applicant presented the same argument, on different grounds, in connection with his earlier appeal. As we explained at that time, "[t]he current rules make clear that the character and fitness investigation may take place after the examination." Grundstein, 2018 VT 10, ¶ 25 n.6. Further, the argument applicant raises now could have been presented in connection with his earlier challenge to the procedure followed by the Board. As a result, res judicata now bars the litigation of that claim. See Lamb v. Geovjian, 165 Vt. 375, 379-80, 683 A.2d 731, 734-35 (1996) (explaining that res judicata "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical" (quotation omitted)).

¶ 12. Applicant also argues that his 2016 bar score suffices to demonstrate his Minimum Professional Competence. Pursuant to our plenary power to regulate the bar of this state, we replaced the prior bar examination with the UBE as a means of demonstrating competence by examination. See Connor, 2006 VT 131, ¶ 6 ("Courts maintain a strong interest in ensuring the competency of legal practitioners within their jurisdictions, and to this end enjoy broad power to establish licensing standards for lawyers as officers of the court."). A state may require "high

standards of qualification . . . before it admits an applicant to the bar," so long as any such requirement has "a rational connection with the applicant's fitness or capacity to practice law." Schware v. Bd. of Bar Exam'rs of N.M., 353 U.S. 232, 239 (1957). The requirement that an applicant achieve a score of 270 on the UBE in order to apply for admission by examination is rationally related to our responsibility to ensure the competence of Vermont lawyers. See V.R.A.B. 1 (observing that "[t]he public interest is best served and protected and the integrity of the Bar of the Vermont Supreme Court is best maintained when applicants for admission are fairly, impartially, and thoroughly examined as to their professional competence as attorneys"). Applicant's arguments to the contrary do not defeat rational-basis review.

¶ 13.    Applicant offers a summary argument that the doctrine of laches precluded the Board from waiting to consider his application until two years had elapsed following this Court's decision in Grundstein. Laches is an equitable defense which a party may invoke upon a showing that he was prejudiced by another party's delay in asserting a right. Preston v. Chabot, 138 Vt. 170, 172, 412 A.2d 930, 931 (1980). Applicant does not argue that the Board was incorrect in concluding that it was foreclosed from considering his application until two years after this Court's decision pursuant to Rule 19. Therefore, it is unclear what "right" applicant asserts the Board failed to enforce. His failure to articulate the essential elements of a claim of laches precludes any further consideration of that argument. See id. (observing burden of establishing laches falls to the party asserting it).

¶ 14.    Similarly, we need say little regarding applicant's suggestion that the rule of lenity somehow militates in favor of a different result. The rule of lenity is applied to ambiguous language in criminal statutes. State v. Wainwright, 2013 VT 120, ¶ 6, 195 Vt. 370, 88 A.3d 423; see also State v. Oliver, 151 Vt. 626, 629, 563 A.2d 1002, 1004 (1989) ("The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature under the guise of judicial construction." (quotation

7

omitted)).  The language at issue here is neither ambiguous nor part of a penal statute, and therefore the rule of lenity has no application.

¶ 15.  Applicant's estoppel argument may be dispatched with similar brevity.  He contends that, in connection with his 2015 application, he formed a contract with the bar pursuant to which the then-existing rules "are the implied terms of admission."  Applicant offers no support for this proposition, does not address any of the necessary elements of such a claim, and does not allege the existence of "exceptional circumstances" which would justify estopping the government.[3]  This sparse pleading is insufficient to allow our review.  See Birt, 2020 VT 55, ¶ 10 n.4 (declining to entertain argument that alleged contract between applicant and bar required application of earlier rules on basis of inadequate briefing); see also V.R.A.P. 28(a)(4)(A) (requiring that argument contain, inter alia, "appellant's contentions and the reasons for them— with citations to the authorities . . . on which the appellant relies").

¶ 16.  We turn, then, to applicant's remaining arguments, which are constitutional in nature.  Licensing Counsel argues that applicant failed to preserve these arguments for our review

---

[3]  As we explained in response to applicant's prior appeal,

> [t]o establish a claim of estoppel, a party must demonstrate that (1) the party to be estopped knew the facts; (2) the party to be estopped intended that its conduct would be acted upon; (3) the party seeking estoppel was "ignorant of the true facts"; and (4) the party seeking estoppel relied to his or her own detriment upon the conduct of the party to be estopped.  In re Lyon, 2005 VT 63, ¶ 17, 178 Vt. 232, 882 A.2d 1142.  In addition, estoppel against the government "is appropriate only when the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case."  In re Letourneau, 168 Vt. 539, 547, 726 A.2d 31, 37 (1998) (quotation omitted).

Grundstein, 2018 VT 10, ¶¶ 26-27 (observing that even had applicant "established the general elements of estoppel," exceptional circumstances which would justify estopping the State did not exist because "[a]ny injustice to applicant is outweighed by the significant public interest in ensuring that candidates for admission to the Vermont bar possess good moral character and fitness").

8

because he did not raise them before the Board. The preservation requirement prohibits parties from raising before a court issues they did not present, "with specificity and clarity," to the administrative agency which served as the original forum for the dispute. In re Entergy Nuclear Vt. Yankee, LLC, 2007 VT 103, ¶ 10, 182 Vt. 340, 939 A.2d 504; see also Pratt v. Pallito, 2017 VT 22, ¶ 12, 204 Vt. 313, 167 A.3d 320. Its purpose "is to ensure that the original forum is given an opportunity to rule on an issue prior to our review." Pratt, 2017 VT 22, ¶ 14.

¶ 17. We find the preservation requirement a poor fit in this context and decline to apply it to applicant's constitutional arguments. Cf. Vt. Nat'l Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 66, __ Vt. __, __ A.3d__ (exercising discretion to address constitutional argument not preserved before agency where "goals of our preservation rules are satisfied" with respect to that claim). First, the Board is not an administrative agency, but an "arm of this Court." Widschwenter v. Bd. of Bar Exam'rs, 151 Vt. 218, 218-19, 559 A.2d 674, 675-76 (1989) (noting that "Board is not an agency"). Moreover, this Court is the original forum for disputes regarding admission to the Vermont bar. V.R.A.B. 25 ("[A]n individual may appeal from a decision of the Board or Committee by filing an action with the Supreme Court as a matter of original jurisdiction . . . ."); see Original jurisdiction, Black's Law Dictionary (11th ed. 2019) (defining "original jurisdiction" as "[a] court's power to hear and decide a matter before any other court can review the matter," or the opposite of "appellate jurisdiction"). Because the purposes of the preservation doctrine would be ill-served by its application to constitutional arguments in this context, we decline to do so.[4]

¶ 18. Licensing Counsel also contends that applicant's constitutional arguments should not be considered because they are inadequately briefed. Indeed, pro se parties must adhere to the minimum briefing requirements set forth in Vermont Rule of Appellate Procedure 28(a)(4). Pcolar

---

[4] Applicant's post-argument filing also sought leave to supplement or correct the record, asking that we consider a document which applicant alleges established the preservation of his constitutional arguments. Licensing Counsel responds that the document does not establish preservation. But because we conclude that preservation of constitutional arguments is not required before the Board, this facet of applicant's motion is hereby denied as moot.

v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 19, 192 Vt. 343, 59 A.3d 702; see also V.R.A.P. 28(a)(4) (requiring that argument contain "the issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies"); see also Grundstein, 2018 VT 10, ¶ 24 n.4 (declining to address applicant's allegations of "various constitutional defects in the bar admission process" as "inadequately briefed"). Excepting the omission of a discussion of preservation, while not a paradigm of clarity, applicant's constitutional briefing minimally met the requirements of Rule 28(a)(4); because we hold that preservation was not required here, this omission is harmless. We therefore address applicant's constitutional arguments to the extent we can discern them.

¶ 19. First, applicant alleges that the 2016 decision to require a UBE score in connection with applications to the Vermont bar amounted to a taking of his property interest in his non-UBE bar score in violation of the Takings Clause of the Fifth Amendment, which prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. However, "a party challenging governmental action as an unconstitutional taking bears a substantial burden." E. Enters. v. Apfel, 524 U.S. 498, 523 (1998). "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" Phillips v. Wash. Legal Found., 524 U.S. 156, 164 (1998) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S., 564, 577 (1972)).

¶ 20. As Licensing Counsel observes, at least one court has declined to recognize a property interest protected by the Takings Clause in a professional license where the license applicant has not met the requirements. See Alston v. Nat. Conf. of Bar Exam'rs, 314 F.Supp.3d 620, 628 (E.D. Pa. 2018) (holding unsuccessful bar examinee could not assert Takings Clause violation because "by definition he cannot have a property right in a professional license he has not yet obtained"). Others refuse to find a compensable property interest in a professional license

for purposes of the Takings Clause, concluding that because "[t]he rights to sell, assign, or otherwise transfer are traditional hallmarks of property," "a cognizable property interest in a government license" exists only where the license includes the right to transfer or exclude. Filler v. United States, 116 Fed. Cl. 123, 130 (2014) (holding as matter of law that neurosurgeon's medical license does not constitute compensable property interest for purposes of the Takings Clause), aff'd on alternate grounds, 602 Fed. App'x 518 (Fed. Cir. 2015) (per curiam). Applicant does not address this line of cases, but instead argues that he has a property interest in the nature of a protected pre-existing lawful nonconforming use, citing two land-use cases. See Modjeska Sign Studios, Inc. v. Berle, 373 N.E.2d 255 (N.Y. 1977); Hoffman v. Kinealy, 389 S.W.2d 745 (Mo. 1965) (en banc). The analogy applicant seeks to draw is rendered opaque by a paucity of briefing, and we cannot fill in the gaps in his argument. Applicant's tenuous and brief comparison to the land-use context is insufficient to establish the existence of a constitutionally protected property right in the continued validity of his 2016 score.

¶ 21. Applicant's two[5] remaining arguments are directed at Rule 9(b)(1), which requires that applicants seeking admission by examination "sit for the UBE within five years of graduating from law school or completing the [Law Office Study] Program, unless the time is extended for good cause." But although he applied for admission by examination, applicant did not request to sit for the UBE; rather, he sought to offer his 2016 non-UBE score in satisfaction of the requirements for admission by examination. Accordingly, the Board did not consider whether applicant was eligible to sit for the UBE under Rule 9(b)(1). It mentioned the five-year limitation only to say that, even assuming applicant's 2016 non-UBE score was sufficient to demonstrate

[5] We do not address a third argument under the Common Benefits Clause of the Vermont Constitution because applicant raised it for the first time in his reply brief. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310 ("We need not consider an argument raised for the first time in a reply brief.").

11

Minimum Professional Competence under the current rules, it would nonetheless run afoul of the requirement that the score be obtained within five years of applicant's law school graduation.

¶ 22.     The constitutional arguments applicant levies at the five-year limitation thus require this Court to assume that, had applicant requested permission to sit for the UBE, the Board would have denied that request pursuant to Rule 9(b)(1).  This we cannot do.  The five-year limitation does not apply categorically, but instead is subject to extension "for good cause."  V.R.A.B. 9(b)(1).  Because applicant did not request permission to sit for the UBE, the Board has not had occasion to consider whether an extension would be warranted by the facts.  See, e.g., Birt, 2020 VT 55, ¶¶ 12-13 (affirming Board's finding of no good cause to extend five-year limitation where applicant completed educational prerequisites nearly two decades ago because his employment "touch[ing] on some aspects of the law" did not constitute "significant" ongoing contact with the law).  Therefore, applicant's argument is speculative in nature—it does not raise an actual controversy, but instead invites this Court to issue an advisory opinion on the constitutional legitimacy of a requirement attached to a path to admission that applicant did not seek to take.  In re Investigation into Programmatic Adjustments to Standard-Offer Program, 2018 VT 52, ¶ 13, 207 Vt. 496, 191 A.3d 113 (explaining Court only has jurisdiction over "actual controversies," which occur when "the consequences of the dispute" are "so set forth that the court can see that they are not based upon fear or anticipation but are reasonably to be expected" (alteration omitted)); see also Wood v. Wood, 135 Vt. 119, 121, 370 A.2d 191, 192 ("It is the tradition of constitutional common law that the establishment of legal doctrine derives from the decision of actual disputes, not from the giving of solicited legal advice in anticipation of issues.").  As a result, we are without subject-matter jurisdiction to consider applicant's constitutional challenges to Rule 9(b)(1).  In the Matter of Constitutionality of House Bill No. 88, 115 Vt. 524, 528-29, 64 A.2d 169, 172 (1949) (holding Court has no power to give "an opinion upon a question of law not

involved in actual and bona fide litigation brought before the Court in the course of appropriate procedure.").

¶ 23.    The Board correctly applied the Rules to applicant's situation and determined that he had not met his burden of establishing Minimum Professional Competence by offering his 2016 bar score.

Affirmed.

FOR THE COURT:

_____

Associate Justice